# REPORTS

OF

## CASES ARGUED AND DETERMINED

### AT JUNE TERM, 1850.

BEATTIE, Adm'r, *vs.* ABERCROMBIE et als.

1. This court will not undertake to say that the chancellor has erred in refusing to suppress a deposition, when it does not appear by the record that the facts on which the motion was predicated were established before him.
2. A motion to suppress a deposition for an irregularity in taking it comes too late, when made for the first time at the hearing of the cause.
3. Where a party, without objection, permits secondary evidence to be given against him in the primary court, his assent will be presumed, and he cannot be heard to complain of it in an appellate tribunal.
4. The executor or administrator, as respects the personal estate of the deceased, is the only representative that the law will regard, and his rights as to such are exclusive.
5. The acts of an executor or administrator may be questioned in equity by a legatee, distributee, or other person having an interest, but it must be done upon appropriate allegations in the pleadings.
6. If a bar, *prima facie* good, be set up by the defendant to the relief sought by a bill, it cannot, in the absence of appropriate allegations, be impeached by proof of fraud or mistake, however strong.
7. Where, therefore, the allegation of a bill is that a deed of release executed by the distributees of an estate to one of its debtors is inoperative by reason of fraud or mistake, and the defendant sets up a release from the administrator, the latter, if proved, is a complete bar, unless the bill is so amended as to impeach its validity.
8. Where joint debtors of an estate reside in different jurisdictions, an administrator in either may effectually settle and release the demand as against all of them.

2

ERROR to the Chancery Court of Barbour.    Tried before the Hon. J. W. Lesesne.

THE facts of the case may be found in the opinion.

BUFORD and RICE, for the plaintiff:

I. Complainant's removal from the administration operated as an abatement of the suit.—2 Ala. 415-418; 3 ib. 570.

2. Depositions taken whilst a suit stands abated will be suppressed.—Gresley Ev. 152; 1 Smith's Ch. Pr. 341, 525; 1 Story's Eq. Pl. §§ 328, 356-7, 361.

II. The pretended settlement in Georgia is wholly invalid as a defence in this suit—for many reasons. For instance, that settlement is not a valid defence here, because there is no legal proof—(that is, record proof,) that administration had then been granted to Holt or any other person, upon the estate of the intestate. This court cannot allow the grant of administration by the court of another State to be proved by a witness, without any record evidence. Even if the present complainant was executor *de son tort* in Georgia, a settlement there as such would not bind him in this suit, since he has *subsequently and in* 1840, duly obtained letters of administration in this State.— *Doe ex dem.* Hornby v. Glenn, 3 Nev. & Man. 837; Dickinson v. Naul, 1 ib. 729; 1 Ad. & E. 49; 3 B. & Ad. 638.

III. The pretended settlement or transfer made on the 25th December 1838, cannot bar the relief sought by plaintiff. That transaction cannot be regarded as more authoritative than a stated or settled account between partners: And it is well settled that by showing *mere errors* or *mistakes* in such an account, the party injured is entitled at least to *surcharge* and *falsify* it. If *fraud* is shown, the whole account is thereby *opened*, and the account is not in any respect entitled to the force of evidence against the party defrauded.—Collyer on Partn. § 373, *et seq.*; Vernon v. Vawdry, 2 Atkyns, 119; Robinson v. Alexander, 8 Bligh, N. S. 352; 3 Clark & Finnelly, 717; Oldaker v. Lavender, 6 Sim. 239; Maddeford v. Austwick, 1 Sim. 89.

CAMPBELL and HEYDENFELDT, for the defendants:

1. *That the release executed by Hines Holt, the administrator of William J. Beattie, in 1838, is a bar to the relief*

Beattie, adm'r, v. Abercrombie et als.

*and discovery sought by the bill.* That release was executed by the administrator of Beattie: In that character Holt represented *exclusively* the rights and credits which were of the decedent. He alone was competent to release them or to receive satisfaction of them. That release is operative until it is impeached. No averment of the bill assails the transactions between the defendants and Holt. The existence and sufficiency of his release are not put in issue, and the legal effect remains undisturbed by any thing contained in the bill.— 1 Williams on Ex. 508-9.

2. That the bill of the plaintiff is insufficient as a bill to impeach the release of the distributees. It is not competent for an administrator in his official capacity to impeach the transactions settled by the distributees. The distributees must appear on their own behalf and represent their own interests. An administrator cannot draw in question the validity of their transactions. They are *res inter alios acta.*

3. That the administrator appointed in Russell county is concluded by the acts of the administrator appointed in Georgia. He cannot impeach or question those acts. He does not stand in privity with him, nor is he entitled to gainsay any thing he has done. The administrator *de bonis non* could not by the common law do this. The distributees alone, upon proper allegations, were competent to do it. Much more is an administrator of an independent jurisdiction concluded by the acts of an administrator appointed in a forum which has jurisdiction of the subject.—Story's Conf. Laws, § 515; 1 Barbour Ch. Rep. 189.

4. It would have been improper to have suppressed the defendant's testimony. There is no evidence in the record to show at what time the suit was abated. It does not appear that it was abated when the testimony was taken. Even if abated, the acts of the commissioners in taking testimony are valid, without a notice to them. No notice was given until the testimony was taken.—3 Peere Williams, 195.

PARSONS, J.—The complainant, who is the plaintiff in error, filed his bill in the Chancery Court for Barbour county, on the 22d day of August 1845; and it appears that after he filed his bill, he was removed from his office of administrator of

William J. Beattie, deceased, by order of the Orphans' Court of Russell county, in which he had received his appointment. The same court afterwards appointed him administrator *de bonis non* of his intestate's estate, and this suit was subsequently revived by him, under his new appointment.

The complainant, at the November term 1847, of the Chancery Court, which was prior to the term at which the cause was heard, moved to suppress the depositions which had then been taken by the defendants, on the ground that there was no party complainant in the cause, at the times when those depositions were taken. The chancellor overruled the motion, and that is now assigned as one of the errors. Among the depositions to which the motion applied was that of Hines Holt, and we may confine our decision upon this question to his deposition alone; because the others are not indispensable, according to our view of the case. This deposition was taken on the 24th day of October 1846, and the question for us to decide is whether or not the chancellor erred in refusing to suppress it, according to the motion which was made for that purpose at the November term 1847. The motion was made upon the supposition, that the complainant had been removed from the administration before the deposition was taken, and that he was not re-appointed, or at any rate, that he was not made a party again to this suit, until afterwards. If that fact had been made to appear to the chancellor in support of the motion to suppress, the question of error would have been fairly before us. But it was not made to appear to the chancellor at the time when the motion to suppress was made, nor at any time before, that the complainant had been removed from his administration at or before the time when Mr. Holt's deposition was taken. If this fact was shown to the chancellor by any record, or other evidence, when the motion to suppress was made, or at any time before, the transcript of this cause does not show it, and therefore we can see no error in the decision of the chancellor upon what was then before him.

The complainant's counsel, at the hearing of the cause, again moved to suppress the same deposition, on two grounds; 1st, that it was taken after the return day of the commission, and 2d, that the commission issued after the complainant was removed from his administration and while it was abated. This motion

Beattie, adm'r, v. Abercrombie et als.

was also overruled, and correctly, we think, if for nothing else, because the motion was made at the hearing. The Chief Justice and myself, who sat alone, so decided in the case of Jordan v. Jordan, 17 Ala. 466. In that case we held that in general a motion to suppress a deposition for irregularities in the taking of it came too late at the hearing of the cause. The point upon which the Chief Justice and myself could not agree in that case does not belong to this, and therefore we might rest this question upon the authority of that case and the authorities there cited. But the counsel for the defendants has refered us to other authorities to the same effect, among which are 1 Swanston's Rep. 171, and Turner & Venables' Prac. 578.

Mr. Holt testifies in his deposition that he was appointed administrator of William J. Beattie, deceased, by the Inferior Court of the county of Muscogee, Georgia, sitting as a Court of Ordinary, about the 10th of December 1838, and it appears by his deposition that he acted as such in that State. It is proved, too, by the deposition of James Beattie, sen'r, which was taken and used in this cause by the complainant, that Mr. Holt was such administrator; and this proof was brought out by one of the complainant's interrogatories, which was evidently intended for that purpose. In this place it is proper to mention, also, that Mr. Holt, in his deposition, proves a copy (accompanying his deposition) of the deed of the 25th day of December 1838, executed by himself and others, and he proved the execution of the original. In another part of this opinion we will advert again to Mr. Holt's appointment as administrator, and to the deed of the 25th day of December 1838. We allude to them now for the purpose of deciding in this connection, whether the administration of Mr. Holt and the deed are sufficiently proved by the evidence which has just been stated. It is true an authenticated copy of the record of Mr. Holt's appointment, and the production and proof of the original deed by the subscribing witness, would have been the best evidence, and parol evidence in such cases is not in general admissible. But this evidence was all read at the hearing of the cause, without objection made in the Chancery Court, at that or any other time, so far as appears by the record. It is objected to in this court for the first time. The objections that were made, and

which we have noticed already, related, not to the evidence, but to the mode and time of taking it. To specify some objections is to waive all others.—Ungro v. Wigins, 1 Rawle's R. 231-235. The cases are numerous in which parties have been concluded by secondary evidence, unless objected to in due time; and it is immaterial whether the best evidence, which is thus supplied, consists of records, deeds, or other writings.— See the cases collected in 1 Cowen & Hill's notes, 200, 558. It was held by the Court of Appeals of Kentucky, that where there is no objection made, the copy of a copy of the deed in evidence has the same effect as the original. The copy was not objected to on the trial below, and the Court of Appeals said, it would be palpably unjust and contrary to the settled course of adjudications in that court, to allow objections for the first time to be there taken to evidence, because it was secondary in its grade.—Bligh's Lessee v. Atwell, &c. 7 Monroe's R. 264. And the same rule was applied by the same court in a chancery case.—Fleming v. Thomas, 4 J. J. Marshall's R. 48. So if a release is read on the trial, without objection that it was not proved by the subscribing witness, this objection cannot avail after verdict, as a ground for a new trial.—*Doe ex dem.* Tatum & Baxter v. Paine & Sawyer, 4 Hawk's R. 64; Wilkinson v. Jett, 7 Leigh's R. 115. The execution of the original deed was in fact proved by Mr. Echols, the subscribing witness, and it was enclosed in his deposition taken in this cause. For reasons which it would be tedious and unnecessary to state, we think it doubtful whether that deposition should have been admitted. If the chancellor had suppressed it, still the secondary evidence, upon which we have remarked, sufficiently supplied its place, as it was not objected to. It may be said that as the deposition of Echols was admitted, the complainant would have gained nothing by excluding the secondary evidence, and that he ought not to be required to make a useless objection. The answer is, that although he might have gained nothing, in the Chancery Court, by objecting to the secondary evidence, yet, if he wanted our decision upon it, he should have made the objection there, as it is the settled course here not to notice such objections, unless made there. If a party permit secondary evidence to be given against him, without objection, his assent is to be presumed. For this reason alone,

this court ought not to reverse for such a cause. There are other strong reasons which will be found in the cases to which we have refered.

We come now to the main question in the cause, but in order to make our views intelligible, we will state the case as briefly as possible. In consequence of the treaty of March 1832, between the general government and the Creek Indians, it became the duty of the government to remove those Indians to their new home in the west. To this end, a contract, bearing date the 13th day of August 1836, was entered into between Capt. John Page, of the United States army and superintendant of the removal of the Creek Indians, under authority of the United States, of the first part, and certain persons styled "The Alabama Emigrating Company," of the second part. The said William J. Beattie was one of the persons of the second part—most of the defendants were also parties with Mr. Beattie, of the second part. The other defendants are the personal representatives of persons, now deceased, who were parties of the second part. The parties of the second part stipulated to remove the Creek Indians who were within Alabama to their new home in the west. There were other stipulations, also, which were necessary under the principal undertaking, but which it is not necessary to state. On the other hand, it was stipulated that the government should compensate the Emigrating Company by the payment of money for the performance of the contract on the part of the company, and the payment was to be according to certain rates stated in the contract. It is the object of the complainant's bill to have an account and payment of his intestate's portion of the money, which was paid by the government to the company, in consideration of the performance of the contract. It is a further object of the complainant, by his bill, to have an account and payment of several other demands against the company, for moneys of his had and received by the company, for his services in the business, &c., all relating more or less to the transactions already stated. It appears that William J. Beattie died in the fall of 1837, before the business of the company under its contract was completed. The complainant was appointed administrator of the said William J. Beattie, deceased, on the —— day of January 1840, by the Orphans' Court of

Russell county, in this State. The complainant is one of the distributees of the estate of his intestate.

The complainant having by his bill stated his demands, as the administrator of his intestate, against the company, of which, as has been said, the intestate was a member, proceeds to state that the company, some time in December 1838, offered to the complainant and his father (who is the complainant's witness, James Beattie, sen'r,) twenty-five thousand dollars, if the complainant and his father would give to the company a full receipt for all demands which the representatives of William J. Beattie, deceased, had against the company, and release to the company all demands of the representatives of the said William J. against William A. Campbell, agent of the company—and all demands of the representatives of said William J. against the government of the United States; and the complainant states in his bill that he and his father accepted this offer and gave the required receipt and release. It appears by the bill that the sum offered by the company was actually paid. But the complainant states that he and his father were very much deceived and defrauded in this settlement by the company and its agents, and he charges such mistakes and such acts of fraud, as are entirely sufficient, if established, to induce a court of chancery to set aside such settlement, receipt, and release, as those stated in the bill, in any proper proceeding for the purpose. But the settlement, receipt, and release, relied on by the defendants as a bar to the relief prayed by the bill, are very different from those stated in the bill. The deed of the 25th day of December 1838, a copy of which, as well as the execution of the original, was proved by the deposition of Hines Holt, as mentioned in a previous part of this opinion, is the matter relied on as a bar by the defendants. It was executed by Mr. Holt as the administrator of William J. Beattie, and by the complainant and his father, and the other distributees of the intestate or their guardian, by their attorney in fact. They thereby acknowledged the receipt from the defendants, Watson & Iverson, who were members of the company, of the sum of twenty-five thousand dollars, in full consideration for the claims, demands and dues of William J. Beattie, deceased, against the Emigrating Company, and each and every member thereof, arising under the various contracts, made by the company or

Beattie, adm'r, v. Abercrombie et als.

its agents with the government of the United States for the emigration and subsistence of the Creek Indians, their baggage, &c. And they thereby assigned to Watson & Iverson all the claim, which said intestate in his life-time and which his legal representatives then had, in the funds, debts, claims, demands and dues of the company, and against the individual members, arising out of company transactions, and especially against William A. Campbell—with power to Watson & Iverson to demand, recover, and receive all moneys, debts, dues and demands, which the intestate or his representatives had against the company or the members thereof, and more especially against said Campbell, together with the interest or share to which the intestate or his legal representatives might be entitled, out of any debts, claims, or demands, still due and uncollected, belonging to the company, either against the government, or any person or persons whatsoever. The defendants say that Watson & Iverson threw the share or interest conveyed by this deed into the common stock of the company, the sum paid by Watson & Iverson being accounted for to them by the company. This deed can operate in equity as a direct release to the company, and unless obtained by fraud, imposition, or mistake, it is a bar to the demands set up by the bill. As to this, we might decide two questions—first, whether in view of the bill, answers and evidence, there are such circumstances of fraud, imposition or mistake established, as should have induced the chancellor, on the mere merits of the case, to set aside the deed relied on as a bar. We are not prepared to say that he should have done so, but we have not so fully considered that question as we should have done, had it been necessary to decide it. Our decision turns on the second question, whether there are any charges of fraud, imposition or mistake in the bill against the deed which is set up by the defendants as a bar; or if any, whether they extend to the instrument as the deed of Mr. Holt, the intestate's administrator in Georgia. The bill states a receipt and release that were given to the company by the complainant and his father, and then it charges fraud, &c., which are sufficient to set aside a receipt and release executed by the complainant and his father, in any appropriate suit for that purpose. But the bill is altogether silent as to any receipt or release executed by the administrator, Mr. Holt. If

the charges of the bill against the instrument, which it states, be fully admitted, they can have no effect against the deed relied on as a bar by the defendants so far as it is the deed of Mr. Holt. That deed, considered as his deed alone, as the intestate's administrator, is a bar to this suit, because as the deed of the administrator, it is in no manner impeached by the bill. It is not mentioned or alluded to. An executor or administrator is the only representative of the deceased, that the law will regard in respect of his personalties. His rights in regard to them are exclusive.—1 Williams on Ex'rs, 508-9. It is true that there are instances in which his acts may be questioned, more especially in equity, by a legatee, distributee, or other person having an interest, but this must be done upon appropriate allegations in the pleadings. A plaintiff in equity, knowing that a particular matter will be set up as a bar to the relief prayed, may state it in his bill and then charge such facts as will avoid the bar. But if a bar be set up in defence, of which he was not aware, he can amend his bill so as to allege any matters in avoidance. For if a good bar *prima facie* be set up by the defendant and proved, it cannot be impeached by proof, however strong, that it was obtained by fraud, unless there be appropriate allegations in the bill.—Weed v. Small & Miles, 7 Paige's R. 573. In James v. McKernon, 6 Johns. R. 543, Chancellor Kent states what is now the general practice in chancery: "If a defendant by his plea or answer offered new matter, the complainant formerly used to reply specially, and the pleadings might go on, as at law, to a rebutter; but special replications are now out of use, and the plaintiff is to be relieved according to the form of the bill. But if the complainant conceives from any matter offered by the plea or answer, that his bill is not properly adapted to his case, he may obtain leave to amend his bill and suit it to the defence, or he may file a supplemental bill." The case from which this extract is made is a good deal like the present. A bill was filed for an account, and the defendant in his answer set up an agreement under seal between the parties, as a defence. It was held that the complainant could not prove the agreement to be fraudulent, because there was no allegation of fraud in the bill. And though there was proof of the fraud, which was read in the court below without objection, the decree which was rendered thereon was re-

versed for the want of allegations in the bill to suit the evidence. And Maury's Adm'r v. Mason's Adm'r, decided by this court, 8 Porter's R. 211, is to the same effect.

The counsel of the defendants contend that the bill is insufficient to impeach the release of the intestate's distributees; that it is not competent for an administrator, as such, to impeach the transactions settled by the distributees, more especially by a suit to which they are no parties, (and most of them are not parties to this suit—none as distributees.) But that question need not be touched in this case; because Holt's release, which is not impeached by the bill, is a sufficient bar. The counsel for the defendants also contend that the complainant, as the intestate's administrator in Alabama, cannot impeach the acts of Mr. Holt as the intestate's administrator in Georgia—that this can be done only by the distributees; that between such administrators there is no privity, their relation not being changed by our statutes, or the decisions thereon relative to administrators and administrators *de bonis non* appointed here. But even if we could decide that the whole of this argument is wrong, the complainant would not be aided ; because if he can, as the administrator in Alabama, impeach the acts of the administrator in Georgia, the answer is that he has not done so.

We have only to notice one other question—the question whether Mr. Holt, on the 25th Dec. 1838, had authority to make settlement of the claims in favor of his intestate against the surviving members of the company, and to assign and release them, as he did by his deed of that date. If he had such authority his deed is a good bar, it not being properly impeached in this suit. Mr. Holt was the only administrator of the intestate at that time. The complainant was not appointed in Alabama until some time afterwards. Before he was appointed the claims upon which his suit is founded were fairly settled and released by his intestate's administrator in Georgia, for the settlement and release not being effectually impeached in this suit, we must regard them as having been made in good faith. Does the complainant suppose that he alone, as the administrator in Alabama, had authority to release these demands? Or does he suppose that he has the exclusive right to release some of the defendants, conceding to the administrator in Georgia the right to release others? It appears by the case that some mem-

bers of the company reside in Alabama and others in Georgia. The intestate's demands were not against some of the defendants, but against all.    The intestate in his life-time could not have closed this business with the other members of his company finally and effectually, but by a settlement with or a suit against all.    It appears by the evidence that Watson & Iverson, two of the members of the company, in taking Mr. Holt's assignment and release of the 25th day of December 1838, acted in fact as a committee of the company, and it is the same as if it had been a release directly to all the surviving members of the company.    As the demands of the intestate were joint against all the members of the company, some of whom were domiciled in Georgia, and as Mr. Holt could not effectually close the transactions without the concurrence of all, we cannot doubt but that he had full authority under his administration in Georgia to settle with and discharge all the parties.    It appears by the evidence that the settlement was in Georgia—and further, that the company held its meetings for business purposes in that State, and that its books and papers were there, and we may presume that its funds were there.    But it does not necessarily follow that the authority of Mr. Holt was exclusive.    If there had been then an administrator in Alabama and he had closed the transactions and released the demands, that might have barred Mr. Holt.    We think there may be cases, and that the present is one of them, in which the authority of an administrator in one State and an administrator in another, of the same intestate, is concurrent; as if the intestate held a promissory note made by A. of the one, and by B. of the other of those States—one of these administrators has as much right to receive the money owing by this note as the other; and further, either of the makers of the note may pay the whole sum to the administrator of the State within which that maker lives, and this will discharge the whole debt.    These demands of the intestate against the surviving members of his company cannot be said to have had a positive and individual locality.    As debts owing to the intestate, they were owing by persons domiciled in Georgia, as well as by persons domiciled in Alabama; they were joint and practically inseparable; all the debtors were as one, for the concurrence of all was necessary, in any suit or settlement which could be final or effectual as to all.    There is a

case stated by Judge Story, which is not of the nature of the question we are considering, yet it suggests reasoning, we think, which tends to our conclusion.—Story's Confl. of Laws, § 521; Orcutt v. Orms, 3 Paige's R. 459: And see Whyte, Adm'r, v. Rose, 3 Adolp. & Ellis, N. S. 493. We can see no error in the decree dismissing the bill. Let it be affirmed.

DARGAN, C. J. not sitting, on account of relationship to one of the parties.