COLGIN ET AL. *vs.* REDMAN ET AL.

1. A creditors' bill, filed by the beneficiaries, for the settlement of a deed of trust executed by the debtor, which required that the secured creditors should assent to its provisions within six months, must allege that the complainants assented to the deed.

2. An allegation that the complainants "have consented to the provisions of said deed," is sufficient, although the deed requires that they should assent to it "*within six months.*"

3. The rule which requires a dismissal of the whole bill, if any one or more of several co-complainants fail to make out their case, has never been applied with any stringency to creditors' bills; and unless a misjoinder of such complainants will affect the propriety of the decree, the objection will not be allowed to prevail in any case, when taken for the first time at the hearing.

4. Even if the objection for misjoinder of complainants were allowable in cases of creditors' bills, it should be interposed by way of demurrer; and the cases are exceedingly rare, if they exist at all, in which demurrers to creditors' bills for misjoinder of complainants will be sustained.

5. A bankrupt is not a competent witness to testify for his assignee, for the purpose of increasing the fund in his hands; but when his testimony tends to decrease that fund, he is considered as swearing against his interest, and is competent.

6. The mere fact, that a witness is a party to a suit in chancery, does not render him incompetent. If he has no interest in that part of the litigation about which he is called to testify, or if, being interested, he is examined as to matters which militate against that interest, he is perfectly competent.

7. Where a bill is filed by the secured creditors, for the settlement of a deed of trust, the maker of the deed, although he is a defendant to the bill, is a compe-

tent witness for one of the complainants, to prove the *bona fides* of his debt and his assent to the deed, it being shown that after the execution of the deed he had obtained his discharge in bankruptcy.

8. An objection to a deposition, on account of the incompetency of the commissioner to act as such, cannot be taken for the first time at the hearing. The objection should be taken and reserved at the time of filing the cross-interrogatories.

9. Mere identity of name, of itself, is not sufficient to establish the fact, that the commissioner, before whom a deposition is taken, is the same person who is shown by the papers of the cause to be an interested party, and therefore incompetent to act as commissioner ; nor will the deposition be suppressed, on account of the bare identity of name.

10. Orders for the examination of a defendant as a witness for the complainant are made as matters of course, reserving the question of his competency to be made at the hearing ; and there is no rule requiring an affidavit to be previously made of his want of interest.

11. A deed of trust contained the following provisions, viz.: "They (the trustees) shall pay and satisfy the following debts of the party of the first part, *in the following order*, to wit : first class," &c. (naming them.) "The above demands compose the first class of preferred creditors, being principally endorsers, securities, and those who advanced money to the said party of the first part, and all are to be first satisfied and discharged in full. The second class comprises the following claims," &c., (naming them), "which shall be paid ratably and proportionably, after the entire discharge of the debts in the first class enumerated." *Held,*

That the word "order" referred to the division of the debts into *classes*, and not to the *relative position* of the debts specified in the first class ; and that the funds, being insufficient to satisfy all the debts of the first class, must be divided ratably among those who assented to the deed within the time therein specified.

ERROR to the Chancery Court of Sumter.
Tried before the Hon. Anderson Crenshaw.

The facts of the case, so far as they are necessary to an understanding of the opinion and of the errors assigned, appear in the opinion of the court.

BLISS & REAVIS, for plaintiffs in error:

1. The bill is wanting in equity, because the deed of assignment, (which is an exhibit to the bill), requires the assent of the creditors, within six months, and provides for the postponement of those who fail to signify their assent within that time ; and the bill does not allege that the complainants assented within the time prescribed, but merely alleges, that they " consented to the provisions of the deed." This allegation is insufficient to show their right to call for an account

of the trust fund; for it may be perfectly true, and still the complainants may not have assented within the time prescribed by the deed. Applying the rule, that the allegations of a bill are to be construed most strongly against the complainant, Andrews v. McCoy, 8 Ala. Rep. 925; Lockard v. Lockard, 16 Ala. Rep. 430, this bill is fatally defective; and the motion to dismiss it for want of equity, should have been sustained.

2. The complainants, Anderson and Bruce, failed to obtain a decree. The bill, therefore, should have been dismissed as to all the complainants; for the rule is, that if any of the complainants fail, the bill must be dismissed as to all. Moore v. Moore, 17 Ala. Rep. 631; Wilkins v. Judge, 14 ib. 135; Hardeman v. Sims, 3 ib. 747; 1 Dan. Ch. Prac. Perkin's ed. 350.

3. The deed authorized the trustees to pay the debts in the first class, in the order in which they are there set down. It purports to convey all the grantor's property, and provides, that the trustees, with the proceeds, after paying the amount of a certain execution which was a lien on the property conveyed, "shall pay and satisfy the following debts of the party of the first part, in the following order, to wit: the first class." In reference to the debts set down in the first class, the deed declares that, "the above demands comprise the first class of preferred creditors, endorsers, securities, and those who have advanced money to the said party of the first part, and all to be first satisfied and discharged in full." The terms, "shall pay and satisfy the following debts, in the following order," must refer, either to the order in which the debts in the first class are set down, or to the order of the classes. They cannot refer to the order of the classes; for the deed shows that the property conveyed was not sufficient to "pay and satisfy" the debts in all the classes; and it provides, that the debts in the second and third classes shall be paid *pro rata*. There would be an incongruity in saying that the terms, "pay and satisfy the following debts, in the following order," "in full," refer to the classes, two of which are not to be paid in full, but *pro rata*. They must, therefore, refer to the order in which the debts in the first class are set down, and mean that each creditor, in the first class, is to be paid in full, as

he becomes entitled. This construction is strengthened by the fact shown by the deed, that all the debts for which sureties or endorsers were bound, (for which, it is to be presumed, the grantor intended first to provide), are set down in the first class, before any other.

If this be the true construction of the deed, the chancellor ought not to have rendered a decree for an account; because the answer, in response to a special interrogatory as to the amount realized from the trust property, states it to be $2100 less than enough to pay the debts in the first class, which have precedence of those of the complainants. Stamps v. Bracy, 1 How. Miss. 302. Or, if a decree for an account were proper, it should have been based upon the construction of the deed insisted on in the answer, and now contended for.

4. If this construction of the deed be wrong, still, a decree should not have been rendered in favor of Redman. Colgin insists, in his answer, that the debt to Redman, provided for in the first class, was without consideration, and was fraudulent, so fas as the other creditors are concerned. The testimony of Allen sustains the answer on this point; and there is no proof of a consideration, except what is to be found in the depositions of Henry and Phineas Fowlkes. The motion to suppress these depositions ought to have been sustained. The deposition of Henry should have been suppressed, for the following reasons; 1. Because he was interested to increase the fund for the payment of his debts. Powell v. Powell, 10 Ala. Rep. 910-11; Hayden v. Cornelius, 12 Miss. Rep. 321. 2. Because he failed to answer the cross-interrogatories, mentioned in the motion to suppress, sufficiently. Stonebreaker v. Short, 8 Barr, 155; Ketland v. Bisset, 1 Wash. C. C. Rep. 144; Dodge v. Israel, 4 Wash. C. C. Rep. 323; Bell v. Davidson, 3 ib. 328; Nelson v. United States, 1 Peters' C. C. Rep. 235; Mosely v. Mosely, Carri. & Nor. Rep. 522; Spence v. Mitchell, 9 Ala. Rep. 744. 3. Because he was a party defendant, and the order to take his testimony was without notice, and without any affidavit or suggestion, that he had no interest in the cause.

The deposition of Phineas Fowlkes should have been suppressed, because he was surety for the debt to the com-

plainant Bruce, and therefore interested. McCall v. Sinclair, 14 Ala. Rep. 764.

If, however, these depositions were admissible, they, together with the other testimony on behalf of Redman, do not prove the validity of his debt. This testimony shows, that shortly after, Redman was following the business of a wagoner, and then engaged for a short time in selling slaves for other persons, at fifteen dollars a month. Fowlkes owed him $17000, and he owned from twenty to thirty slaves besides. This is incredible in itself, and cannot outweigh the evidence of Allen. Besides, the facts, that Redman was in poor circumstances, and employed at a small salary a short time previous to his removal to Alabama; that he had no ostensible property; that he told Allen, as late as 1839, that he was poor, and dependent on his profession; that Fowlkes never had any thing to represent so large a debt as he pretended to owe Redman; that his books did not show any transactions with Redman; that he and Redman had secret interviews on the eve of making the assignment; that they were on terms of great intimacy; and that Fowlkes refused to answer the cross-interrogatory calling upon him to state whether he received a full, fair, and honest consideration from Redman, for the note, raise so strong a suspicion against the validity of Redman's debt, as to overcome the evidence of Henry and Phineas Fowlkes, as to the consideration of the note, however positive it may be. Nelson v. United States, 1 Peters' C. C. Rep. 235.

5. Colgin is a creditor provided for in the deed, as well as trustee, and, having no notice at the time he became a party to it, that Redman's debt was fraudulent, he has the right upon discovering the fraud, to resist paying the debt, out of the trust fund, in which he, as a creditor, is interested. His being trustee, cannot affect his rights as a creditor. Drake v. Moore, 18 Ala. Rep. 597; Stamps v. Bracy, 1 How. Miss. Rep. 312.

J. B. CLARKE, contra:

1. The maker of the deed of assignment intended to place all the creditors named in the first class on an equality; else why classify them at all? This intention is arrived at

by an examination of the whole deed; not from any single clause; not by giving a particular expression a controlling force. Watts v. Sheppard, 2 Ala. Rep. 434; Bates v. Bank of Ala. ib. 473–4; ib. 477–8; 9 Pick. 422.

And in construing this deed, we must not forget that *equality is equity ;* that we must give it a *reasonable and probable* construction, 1 Sup. U. S. D. 70, § 285.

2. The objection to the joinder of complainants who failed to make out their interest came too late at the hearing for the first time, and was properly disregarded, as their joinder in the bill did not affect the propriety of the decree. Newhouse and others v. Miles, &c., 9 Ala. Rep. 460; Watertown v. Conner, 4 Paige, 510; Story's Eq. Pl. § 544.

3. The motion to suppress the depositions came too late, being made for the first time at the hearing of the cause. Beattie, Adm. v. Abercrombie, &c., 18 Ala. Rep. 9.

4. The rule that a deposition can be suppressed, because some of the cross-interrogatories were not answered, has never prevailed in Alabama.

5. An order to take the deposition of one defendant, to be read against another, is taken as a matter of course, and requires neither notice, nor affidavit to obtain it. 2 Daniel's Ch. Pr. 1044.

6. A discharged bankrupt has no disqualifying interest left in him. Kyle & Gunter v. Bostick & Sherrod, 10 Ala. Rep. 589.

7. If, however, H. A. Fowlkes had any interest, he was testifying against that interest; the same as to Phineas Fowlkes.

8. A trustee under a deed of assignment can never question the *bona fides* of the deed, or any debt secured thereby; and being a beneficiary under the deed can make no difference. He must, before he can be heard to speak, restore the parties to where they stood before he accepted the trust. Mills v. Angell, 6 Paige, 481.

LIGON, J.—The bill in this case was exhibited by certain creditors of Henry A. Fowlkes, in behalf of themselves and such other creditors of said Fowlkes as might join in the suit, and contribute to its expenses, against said Fowlkes, and

John Colgin and Edward C. Mosby, who were named trustees in a deed of trust made by Fowlkes for the benefit of his creditors. By the terms of the deed the creditors are divided into classes, and are required to assent to the provisions in their favor within six months, or forfeit their priority. The complainants in the bill, and Colgin, the defendant, who is also a creditor, are put in the first class, and the questions raised by the errors assigned and insisted on, except objections to testimony and matters of practice, relate solely to the *bona fides* of Redman's debt, and his assent to the provisions of the deed in his favor, both of which are controverted in the answer of Colgin.

Before I consider these points, I will proceed to dispose of the preliminary questions, made and decided at the hearing.

1. It appears that a motion was made, a*· the hearing, to dismiss the bill for the want of equity, because it was not alleged in it that the complainants signified their assent to the provisions made in the deed of trust in their favor, in the time prescribed by the deed itself, which is made a part of the bill. An allegation of this kind I esteem indispensable to the equity of this bill, for it is filed solely for the purpose of settling the affairs of the trust, and distributing the funds arising under it. Before the complainants can be heard, they must show in their bill that they have complied with the terms of the deed, by which alone they can become entitled to the preference they claim by their bill. This they have sufficiently done; for the bill, after making the deed a part of it, and reciting all its important provisions, contains the following allegation; "Your orators further say, that they have consented to the provisions of said deed, in which they were secured, or intended to be secured, in the first class," &c. This cannot be understood in any other sense than as alleging that they had assented to the deed within the time prescribed by its terms. The allegations in a bill must be certain to a common intent; and in order to render any of them so, the court will look to others on the same subject, standing in intimate and close connection with it; and especially so, when, by detaching it from the balance, it would be useless and unnecessary, but taken in connection with them, it becomes pertinent, necessary, and proper. The

Colgin et al. v. Redman et al.

rule which requires doubtful or equivocal allegations to be taken most strongly against the pleader, does not authorize the court to wrest an allegation from its context, and by this method of isolation to render it insufficient and uncertain.

2. It is also urged, that, inasmuch as the complainants, Anderson and Bruce, failed to prove their demands against the trust fund, and consequently consented to a dismissal of the bill as to them, that the bill should have been dismissed as to all. The rule which requires the dismissal of the whole bill, if one, or more, of several co-complainants fail to make out their case, has never, to my knowledge, been applied with any stringency to creditors' bills; and unless a misjoinder of such complainants will affect the propriety of the decree, the objection will not be allowed to prevail in any case, when taken for the first time at the hearing. Newhouse et al. v. Miles, 9 Ala. Rep. 460; Watertown v. Connor, 4 Paige, 510; Story's Eq. Plead. 544; Erwin v. Ferguson, 5 Ala. Rep. 158. On this subject, Mr. Justice Story, in his work on Equity Pleading, uses the following language; "If the court proceeds to a hearing on the merits, the misjoinder will be disregarded, at least if it does not materially affect the propriety of the decree." Story Eq. Pl. 417. Even if the objection of misjoinder of complainants were allowable, in cases like the present, when the bill is both in form and substance a creditors' bill, to which all who claim to be creditors have a right to become parties, though the interest of each, except as to the fund sought to be charged, is separate from, and independent of, that of all others, still, it should be interposed by way of demurrer. But the cases are exceedingly rare, if they exist at all, in which demurrers to creditors' bills will be sustained, for a misjoinder of claimants. There is rarely to be found a creditors' bill, with many complainants, in which some of them have not failed to make out their case, and consequently have been compelled to submit to a dismissal of the bill as to them; but this has never, in any case which has come under my observation, been allowed to affect the rights of those who established their demands to a decree for the sums due thereon.

3. A motion was also made, at the hearing, to suppress the depositions of Henry A. and Phineas Fowlkes, upon the

grounds, as to the former, that he was a party to the bill—was interested in the event of the suit, and because the deposition was taken before George L. Baine, who was interested in the event of the suit, and security on a debt of the first class secured by the deed.

Henry A. Fowlkes is the maker of the deed of assignment, and is shown by the proof to be a discharged bankrupt. He can receive nothing under the deed, unless there be a residuum after paying all the debts secured by it, and the discharge of all debts proved against him on his bankruptcy. He was examined by the complainant Redman, to prove the consideration of his claim, and his (Redman's) assent to the terms of the deed within six months after its execution. While it is conceded that a bankrupt is not a competent witness to testify for the assignee for the purpose of increasing the fund in his hands, yet it is clear, both on principle and authority, that if his testimony tends to decrease that fund, he will be regarded as swearing against his own interest, and is competent.

The mere fact that a witness is a party to a suit in Chancery, is no sufficient reason to exclude or suppress his testimony. If he has no interest in that part of the litigation about which he is called to testify; or, if being interested, he is examined as to matters which militate against that interest, as is the case here, he is perfectly competent.

The exception taken to the deposition, because it was taken before Baine as commissioner, if it could be allowed to prevail at all, comes too late when taken for the first time at the hearing. Beattie v. Abercrombie, 18 Ala. Rep. 9. It is one of that class of exceptions which should have been taken, and reserved, at the time of filing the cross-interrogatories to the witnesses. A party will not be allowed to go on, without objection, to examine a witness before a commissioner, and when he finds such examination to result disastrously to his interest, to come at the hearing, and object to the competency of the commissioner to act as such. The motion to suppress the deposition for this cause, was rightly disallowed for another reason. It no where appears, either by proof or admission, that the George L. Baine who acted as commissioner in taking the deposition of the witness, is the same person who is security on one of the notes provided for in

the deed of trust, and the bare identity of name will not, of itself, establish that fact.

It is insisted also, that the deposition of this witness should be suppressed, because there was no affidavit made of his want of interest in the subject-matter of the suit about which he was testifying, before the order was made under which his examination was had. I know of no rule which requires such an affidavit; orders to examine a defendant, in behalf of the complainant, are made as matters of course, reserving the question of his competency to be made at the hearing. 2 Danl. Chy. Prac. 1044. But if there be any irregularity in the terms of such an order, the cross-examining party must make his objection at the time of filing his cross-interrogatories; or, refusing to cross-examine, he may object, upon notice, after publication, but not at the hearing of the cause, except by consent. All objections for mere irregularities come too late, when made, for the first time, at the hearing. Beattie, adm'r, v. Abercrombie et al., supra.

The same authority disposes of the objection that the witness failed to answer fully some of the cross-interrogatories propounded to him.

For these reasons, we are satisfied the Chancellor did not err in refusing the motion to suppress the deposition of Henry A. Fowlkes.

The objections to the deposition of Phineas Fowlkes were two, first; that he was interested in the event of suit; and secondly, that his testimony was taken before Baine, an interested party.

This witness was security to one of the notes provided for in the deed in the same class with that of the complainant Redman, at whose instance he was examined. His interest was antagonistic to that of Redman, and consequently when he deposes in favor of the latter, he swears against his own interest, and is competent.

The second ground of objection is the same as that urged against the admissibility of the deposition of Henry A. Fowlkes, and for the reasons given in this opinion for disallowing it in that case, it must be refused in this.

It appears that portions of these and other depositions were ruled out by the Chancellor. The witnesses, in answering

several interrogatories, state what Redman had told them, in the absence of the other parties in interest. This was illegal testimony, and was rightly ruled out and disregarded by the Chancellor.

4. The proof of Henry A. and Phineas Fowlkes clearly establishes the *bona fides* of the debt of Redman, secured by the deed, which had been impeached by the answer of Colgin. The testimony of the witness Allen, who deposes that Redman was poor and unable, in the opinion of the witness, to advance so large an amount of money to Fowlkes, is, at most, but negative in its character, and cannot break the force of the positive testimony of the Messrs. Fowlkes. Again : several other witnesses prove facts which go far to show that Allen was mistaken, as to Redman's pecuniary condition. Upon the proof, we think, the *bona fides* of Redman's debt is fully made out.

Henry Fowlkes states distinctly and unequivocally, that Redman advanced him money at different times, and in large amounts, which he had never repaid, and that he left in his (Fowlkes') hands a large sum of money to be remitted to Virginia, which he did not remit, but used. Phineas Fowlkes proves that Redman was engaged in negro trading; had several thousand dollars of his own, and control of large amounts of the funds of others. These witnesses had opportunities of knowing his true condition, far superior to those of any others who have been examined, and as they stand without direct impeachment, their truth cannot be successfully called in question.

5. The assent of Redman to the provisions of the deed is proved by Henry A. Fowlkes and the witness Steele. The former says, that Redman was present when it was written, and approved what was done; and the latter deposes, that he went with Redman to one of the trustees, to whom Redman exhibited the evidence of his debt, and distinctly assented to the deed. This was shortly after the deed was written, and before the expiration of six months.

6. The only remaining question relates to the construction of the deed. This divides the creditors of Fowlkes into three classes, but as the money arising from the trust property is insufficient to pay off and discharge those of the first class,

it is needless for us to examine its provisions as to the second and third. The language in relation to the payment of the debts in the deed is this: "They (the trustees) shall pay and satisfy the following debts of the party of the first part, in the following order, to-wit: first class," &c. Here follows a large class of debts composing this class, in which is included that of Redman, and the paragraph concludes: "The above demands compose the first class of creditors, being principally endorsers, securities, and those who advanced money to the said party of the first part, and all are to be first satisfied and discharged in full." The deed then proceeds: "The second class comprises the following claims," &c. It is also provided that these "shall be paid ratably and proportionably, after the entire discharge of the debts in the class first enumerated." The deed then devotes any residuum after the payment of the debts of the first and second classes to the payment of the remaining creditors of the grantor.

The trustee, Colgin, insists, in his answer, that the term "order," as employed in the deed, was intended to be applied to the position assigned to the debts as they are enumerated in the first class; so that those first named should be first paid, and if there was a deficiency of funds, those whose claims were not reached by this method of payment should receive nothing. It is clear to my mind, that when the deed was drawn, both the grantor and Colgin acted under the belief that there would be more than funds enough to pay in full the claims of all the creditors of the first class; and it is equally clear, that they thought there would not be enough to pay in full the debts named in the second class. The idea, then, of a preference among the first class of creditors never for a moment presented itself to them; when a deficiency was apprehended, as in the case of the second class of creditors, and a desire to prefer one creditor over another existed with Fowlkes, the language employed by the draftsman gives expression to this desire in the most unambiguous terms, for the deed provides that two of the claims enumerated in that class shall be paid in full, before payment should be made on the remainder, and then that the funds on hand should "be paid ratably and proportionably" to the other claims of this class.

Our construction of the deed is, that the term "order," as employed by the grantor, was intended to apply to the *classes* mentioned in the deed, and not to the creditors enumerated in the first class; so that, as the funds derived from the property are insufficient to pay all the debts enumerated in the first class, they must be divided ratably among such as have assented to the deed.

Such, upon the several points considered, was the opinion of the Chancellor, and his decree, being in conformity to it, must be affirmed.