IN THE

## SUPREME COURT OF JUDICATURE

OF THE

### STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1826, IN THE TENTH YEAR OF THE
STATE.

---

## LAGOW and Others *v.* BADOLLET and Others.

*A.*, as the agent of a steam-mill company, and *B.* agreed under seal, on the
1st of *Sept.* 1821, for the sale by the former to the latter of certain real es-
tate and a steam-engine, at a certain price payable in three years. *B.* was
to have immediate possession of the land; and, when he erected a mill-house
thereon, he was to have the engine to be there put in operation, where it
was to remain till the land and engine were paid for. The title to the land
was to be made on payment of the purchase-money. *B.* took possession of
the land, built the house, and put the engine in operation. The agreement
was assigned under seal, on the 22d of *Sept.* 1821, to the bank of *Vincennes*
by the said agent, who received therefor the same amount that *B.* was to
pay; and the bank, on the 1st of *July*, 1824, assigned under seal the agree-
ment to *C.* A judgment for a certain sum was obtained by *D.* against the
steam-mill company, in *March*, 1823; and the land was sold to *A.* on an
execution upon that judgment issued in *Nov.* following, and returnable in
*March*, 1824. The bank and *B.* became insolvent, and the former forfeited
its charter. *C.* filed a bill in equity claiming a lien on the property, and
praying a sale, &c.

*Semble*, that *A.* cannot avoid his own acts as agent by saying, that his agree-
ment or assignment was not made in the names of the proper partners.

*Held*, that the bank was not prohibited by its charter from dealing in agree-
ments like that which it received from the steam-mill company, where the
transaction was necessary to the security of a debt previously contracted.

*Held*, also, that the vendor of real estate holds an equitable lien on it for the
purchase-money remaining unpaid, whether the conveyance be executed
or not; which lien is not waived by taking a note or bond from the vendee,
unless some distinct security be also taken.

*Held*, also, that the express lien reserved on the engine was no waiver of the

May Term,
1826.

LAGOW
v.
BADOLLET.

lien on the real estate. The doctrine of implied liens is not applicable to the case. As the agreement not to remove the engine before the purchase-money was paid, gave an express lien on it; so the covenant that the title should remain in the vendor until such payment, created an express lien on the real estate.

*Held*, also, that such liens are not confined to the person of the vendor, but that equity will support their assignment in order to promote the ends of justice.

*Held*, also, that at the time of *D.'s* judgment, the steam-mill company held the legal title merely in trust for the purposes of their previous agreement; and that *A.*, being a purchaser with full notice, was bound in equity to execute the trust in the same manner as the company were before the judgment or execution-sale.

*Held*, also, that *C.* was entitled to the lien, created by the agreement, for the purchase-money and interest; that the property should be sold to satisfy the same; and that the surplus if any should be paid to *B.*

*Tuesday,*
*May 2.*

APPEAL from the *Knox* Circuit Court.—*J. Badollet, J. C. S. Harrison,* and *R. Buntin,* trustees for the *United States,* were the complainants. *W. Lagow, N. Ewing, J. D. Hay,* and *B. Parke,* trading under the firm of *C. Smith's Vincennes* steam-mill company, and *W. Fellows,* were the defendants.

SCOTT, J.—This was a suit in chancery in the *Knox* Circuit Court. The record presents the following case: An article of agreement was made on the first of *September,* 1821, between *W. Fellows* of the one part, and *W. Lagow,* attorney in fact for the steam-mill company, of the other part; by which agreement *Lagow* sold to *Fellows* the ground on which the old steam-mill formerly stood, and also the steam engine, boilers, castings, &c., which had been used in the old steam-mill; for and in consideration of which, *Fellows* covenanted and agreed to pay 7,000 dollars on or before the first of *September,* 1824. *Fellows* had immediate possession of the ground; and *Lagow* agreed to deliver to him the engine, boilers, castings, &c., as soon as he should have a suitable building on the said ground, ready to receive them; with an express stipulation that the said engine, boilers, &c., should not be removed from the said ground until the said sum of 7,000 dollars should be paid: and, on the payment of the said sum, *Lagow* was to make to *Fellows* a good and sufficient title for the said lot of land. On the 22d of *September,* 1821, *Lagow,* for the sum of 7,000 dollars, by his writing under seal, assigned, transferred, and set over to the president, directors, and company of the bank of *Vincennes,* the state bank of *Indiana,* all the right, title, and interest of the steam-mill company, in and

53

to the said agreement, and delivered the said article of agree-ment to the said president, directors, and company. On the 1st of *July*, 1822. the said president, directors, and company trans-ferred the said article of agreement, by indenture, to *J. Badollet*, *J. C. S. Harrison*, and *R. Buntin*, the appellees in this case, in trust for the *United States. Fellows* erected a house, and *Lagow* delivered the engine, boilers, &c. according to the agreement: a steam-mill was put in operation, which remained in the pos-session of *Fellows* at the time of filing the bill. The bill states that the bank has become insolvent, and its charter forfeited, and that *Fellows* was, at the time of filing the bill, notoriously insolvent. In the *Knox* Circuit Court, at the *March* term, 1823, *J. M'Donald* recovered judgment against the steam-mill compa-ny for the sum of 123 dollars and 80 cents and costs; on which judgment execution was sued out on the 25th of *November* fol-lowing, returnable to the *March* term, 1824, by virtue of which the said steam-mill lot was taken and sold, and *W. Lagow* be-came the purchaser for the sum·of 450 ·dollars. The bill claims a lien on the land, and buildings, the engine, boilers, castings, &c. and prays a sale of the property, and other relief, &c. The answer of *Lagow* admits the agreement and transfer set forth in the bill, and the judgment, execution, and sale in favour of *M'Donald;* but alleges that he purchased with his own private funds, and not as agent for the company. There was a decree for the complainants, directing a sale of the property; 7,000 dollars and the interest to be paid over to the complain-ants, costs to be paid to the officers, and the surplus if any to be paid to *Lagow. Lagow* appeals to this Court.

It is alleged on the part of the appellant, that the agreement with *Fellows* was not made, nor assigned, in the names of the proper partners. This objection comes rather ungracefully from the appellant: he was the man who made the agreement and assigned it to the bank. He then represented himself as the authorized attorney in fact for the steam-mill company; and he now attempts to avoid his own acts, because, as he alleges, the agreement was not executed according to law. But leav-ing this incongruity out of the case, there is nothing in the re-cord to support the objection.

It is objected again, that the bank had no power to deal in this kind of paper. The correctness of this objection depends upon the charter of the bank. By that instrument the bank is

limited to paper of a certain description, in the ordinary course of business; but the restriction does not extend to any case, where it might become necessary to secure the payment of a. debt previously contracted, and which could not be collected in the regular way.

It is further urged by the appellant, that the express lien. reserved on the engine and castings, was a waiver of any lien on the real estate. In support of this position, he relies on 4 Wheat. 290, 291, where it is said that an express contract that a lien shall be retained to a specified extent, is equivalent to a waiver of that lien to any greater extent; and that taking a note for the purchase-money with approved indorsers, discharges any implied lien upon the land. It is also said that equity will not raise a lien in favour of a vendor who takes other security. Sugd. Vend. 352. The true doctrine seems to be, —and these authorities amount to no more,—that the vendor of real estate, whether conveyed or not, holds an equitable lien. upon it for any part of the purchase-money which remains unpaid; and that lien is not repelled by taking a note or bond of the vendee, except where a distinct security is taken, either of property or the responsibility of a third person. Sugd. Vend. 352.—Mont. Lien, 86, 90, 218.—*Garson* v. *Green*, 1 Johns. C. R. 308 (1). Where an express lien is reserved as to a specified part of the estate sold, as might be reasonably supposed to be the case where any considerable part of the purchase-money is paid at the time of the contract; or where the vendor has secured himself by a mortgage on other lands, or by. the responsibility of other persons; the. vendor evinces his intention not to depend upon the implied lien which equity would raise in his favour. In this case, however, we have nothing to do with the doctrine of implied lien. It is admitted, that an agreement not to remove the engine and boilers gives an express lien on them; and it seems quite as clear, that an express covenant that the title should remain in the vendor till the payment of the purchase-money, creates an express lien on the real estate.

It is alleged again that the lien, if any existed, was confined to the person of the vendor, and could not be assigned. There are some dicta in the books, which, on a superficial view, seem to favour this position, but on a careful investigation they will be found to be inapplicable to a case like the present. There seems to be no good reason why such a lien should not be assign-.

able, where the assignment would subserve the purposes of justice. It is in principle similar to a mortgage, which follows the debt into whose hands soever it may pass. *Martin* v. *Mowlin*, 2 Burr. 979. It was decided in the case of *Cheesebrough* v. *Millard*, that if a creditor who has a lien on two parcels of land, elect to take his whole demand out of one parcel, on which another creditor has a subsequent lien, the latter creditor is, in equity, entitled to have the prior lien assigned to him for his benefit. 1 Johns. C. R. 409. That decision shows, that in the opinion of a very able and learned chancellor, such a lien might be assigned so as to enure to the benefit of another person, and that equity would support such an assignment to promote the ends of justice.

In the case under consideration, *Lagow*, as the agent of the steam-mill company, assigned to the bank all their interest in the agreement. Their right to the 7,000 dollars, and the lien on the property to secure the payment of that sum, constituted all the beneficial interest they had to transfer. By the language of the assignment, it was evidently the intention of *Lagow* to transfer, and of the bank to receive, all the benefits which the company could have derived from that contract. It was a fair transfer of all their right and interest for a full and valuable consideration. It was a payment of a pre-existing debt. And it is believed there exists no rule in equity to set aside such a contract, made under such circumstances. The whole beneficial interest, then, being transferred to the bank, there remained in the steam-mill company nothing but the bare legal title, which they held in trust for the purposes of the contract. 1 Mad. Ch. 289. When *M'Donald* recovered judgment and sued out his execution, the company had nothing of this property but a naked trust, without any beneficial interest either in possession or in expectancy. When *Lagow* purchased at the execution-sale, whether in his own right or as agent is wholly immaterial, he could acquire no more than the company possessed: and having full notice of the situation of the estate, he purchased it subject to all the existing incumbrances, conditions, and trusts, to which it was subject in the hands of the company; and is in equity bound to execute the trust in the same manner as he, or the company whose agent he was, would have been bound to do, had no such judgment, execution, or sale ever taken place. Sugd. Vend. 498.—1 P. Wms. 128. *M'Donald's* judgment and execution could

not affect the rights either of the complainants or of *Fellows.* The complainants had a right to the benefit of the lien to secure the payment of 7,000 dollars, and *Fellows* had a right, on the payment of that sum and the interest, to have a conveyance of the title. If by reason of improvements made by *Fellows,* the property has acquired an increased value, so that on a sale to discharge the lien, it will command a price beyond the amount of the purchase-money with the interest and costs,—the surplus is, in equity and good conscience, the right of *Fellows* and not of *Lagow.* This view of the case leads to the conclusion, that the decree of the Circuit Court is correct, except so far as relates to the payment of the surplus to *Lagow:* in this it is erroneous and must be reversed.

*The Court* entered a decree, directing a sale of the property; appointing commissioners, &c.; enjoining the persons in possession, &c.; with costs to the appellees.

*Tabbs* and *Nelson,* for the appellants.

*Judah,* for the appellees.

(1) Vide *Blackburne,* v. *Gregson,* 1 Cox, 91, A. ed. note 2.—4 Kent, 145—148.—*Evans* v. *Goodlet,* ante, p. 246.