Burns v. Taylor et al.

## BURNS *vs.* TAYLOR ET AL.

1. A defendant, who is a formal party to a bill as husband of one of the heirs at law of an insolvent decedent, is a competent witness for his co-defendant, especially when he testifies against his own interest.

2. The correctness of the rule questioned, which is laid down in Holman's Heirs v. Bank of Norfolk, 12 Ala. 405, that where a defendant who appears from the face of the proceedings to have no interest makes a long and formal answer, setting up as a defence to the bill matters which do not properly concern him, and thereby subjecting himself to a liability for costs, he is rendered incompetent as a witness for another defendant.

3. A vendor who takes no independent security for the payment of the purchase money, has a lien on the lands for its payment, as against the vendee and all claiming under him with notice of the lien; and this principle equally applies to exchanges of lands, and whether the parties execute conveyances or bonds for titles only.

4. When the only condition of a bond for title is that titles shall be made as soon as a patent is obtained from the Government, the presumption from its face is that the purchase money has been paid, and it is no notice to an assignee of an obligee that the purchase money is unpaid.

5. The fact that land is in the possession of a third person, is sufficient to put a purchaser upon inquiry, and to preserve a lien against him if he purchases without inquiry.

6. If a person in possession of land, upon inquiry by one who is about to purchase it from another, relative to the title, advises him to purchase, and assures him that there will be no difficulty about the title if he does, and afterwards delivers up the possession to the purchaser's agent, his acts amount to an abandonment or waiver of a vendor's lien which he held against the person from whom the purchaser bought.

7. And although, when afterwards applied to by the purchaser for an assignment of a title bond held by him, he refuses to make the assignment, until assured by the purchaser that it will not impair his lien, and makes the assignment upon this understanding, this does not place him in any better or worse position, as his lien was already lost by his previous conduct.

ERROR to the Chancery Court of Tallapoosa.

Heard before the Hon. W. W. MASON.

Alexander Burns filed his bill of complaint against the defendants in error, alleging that he held two title bonds from one Salmon Washburn, for certain lands situated in Tallapoosa, copies of which bonds, dated in 1835 and 1836, are annexed as exhibits to his bill; that Job Taylor. Jr. also held said Washburn's title bond, for certain other lands, and that he and complainant exchanged lands; that the exchange was consummated simply by an exchange of Washburn's title bonds; that complainant's lands were estimated to be more valuable than those of Taylor, and that Taylor executed to complainant his notes for $1400, the estimated difference; that Taylor went into possession of the lands which he obtained by the exchange, but complainant has never been able to obtain possession of those which Taylor contracted to give in exchange; that Washburn, on account of said Taylor's failure to comply with the terms of the sale, by which he had procured the said Washburn's title bond, had sold the land to other persons, so that complainant, in fact, has received no lands whatever in exchange for his; that some time afterwards, said Taylor made an assignment of all his lands, or the greater part of them, to his uncle, one Job Taylor, Sr., a resident citizen of Georgia, and among them the lands procured in said exchange from complainant, and had delivered to said Job Taylor Sr. Washburn's title bond made to complainant; that aftewards, to-wit: in 1840, said Job Sr., by his agent, presented said title bond to complainant, and requested him to assign it in writing, so as to enable him to obtain titles to the lands therein mentioned; that complainant at first refused, having become suspicious about the lands for which he had exchanged, and apprehending that, if he did so, he might lose his vendor's lien on the lands which he had given in exchange, and informed said agent of all the circumstances relative to said exchange; that said agent then assured him that his lien could not and should not be affected by a transfer in writing, and that the only object was to facilitate the procurement of titles; that under this assurance complainant made a written transfer of said title bond to said Job Taylor Sr., and that no valuable consideration, or any other consideration than that set forth, ever

passed for the same, and that said Job Sr. is an assignee with full notice of complainant's equities.

The bill further alleges, that said exchange with Job Taylor Jr. was by parol, no deed or memorandum in writing existing, except the title bonds which were exchanged; that complainant has lost or mislaid the title bond which he received on said exchange; that after the said written assignment by complainant, said Job Sr. procured a deed from Washburn, and now holds the legal title to said lands; that suits have been brought on all the notes given by said Job Jr. on said exchange, and judgments recovered thereon against him; that one of said judgments, recovered in the name of complainant for the use of D. S. Robertson, for $850, is the property of complainant, and has never been paid; that the other two judgments were recovered in the name of complainant's endorsees, Henry Starr and John Faulks, and executions thereon being returned "no property found," complainant had afterwards been compelled to pay them by suit on his endorsements; that said Job Jr. has wholly failed and neglected to pay said sum of $1400, which he agreed to pay; that the assignment by Job Jr. to Job Sr. was wholly without consideration, and was intended to hinder complainant in asserting his rights; that, in equity, said Job Sr. and his vendees hold said lands in trust for complainant; that said Job Jr. has died insolvent, and said Job Sr. is in possession of the lands, enjoying the rents and profits.

The bill prays that said Job Sr. may be decreed to convey said lands to complainant, or that they may be subjected to the payment of the $1400 and interest; the prayer for general relief is also added.

Washburn's two title bonds to complainant are made exhibits to the bill. One of them is dated December 11, 1836, and bears this endorsement : "I endorse the within bond to Job Taylor Sr. for a valuable consideration, October 1, 1840." (Signed) " A. Burns." The other is dated November 20, 1835, and bears an endorsement in the same words.

Job Taylor Sr. filed his answer to the bill. Its material allegations are as follows : respondent knows nothing about the alleged exchange of lands, or the agreement of Job Jr. to pay $1400 difference; Job Jr. was extensively engaged, about 1839, and previously, in buying Indian lands on speculation; respon-

30

dent loaned him money for that purpose, and he thus fell in debt to respondent in 1839 in the sum of $23,673 98; respondent purchased from him the land in controversy at the price of $4000, and also sundry other tracts, a schedule of which, with the prices, &c., is annexed to the answer. He avers, that, before making the purchase, he called on complainant, and informed him that he had come to look at the lands, with a view of purchasing them if he liked them; that he inquired of complainant about the titles; that complainant encouraged him to purchase them, and told him there would be no difficulty about the titles if he did so; that relying on this assurance of complainant, respondent took the bond for titles which Job Jr. held, and paid him $4000 for the land; that $600 of this sum was paid in cash, and the balance of $3400 was credited on a note which respondent held on said Job Jr.; that in May, 1840, complainant informed respondent that he was going to leave said lands, and advised respondent to get some one to take possession for him, and willingly surrendered the possession to respondent's lessee.

He further avers, that, in 1839, 1840 and 1841, he purchased lands from said Job Jr. to the extent of about $24,273 98, and also paid out considerable sums to others, to procure titles to the lands so purchased, and he appends to his answer a schedule of the lands so purchased; that these lands were all purchased at a full and fair consideration, and *bona fide ;* that John Rowe acted as respondent's agent in the purchase of some of them; that Job Jr. was largely in debt. Respondent knows nothing respecting complainant's failure to obtain the lands for which he exchanged, and knows nothing about that exchange; denies that he ever took from Job Jr., when he purchased the lands, the title bonds executed by Washburn to complainant; avers that he " never handled or saw such a bond, to his best recollection," and that the bond which he received from Job Jr. was a bond for titles made by complainant to him, Job Jr.; that, some time in 1840, he handed this bond to one Simeon B. Taylor, and requested him to take it to complainant, and get him to execute titles to said lands according to its conditions; but he denies that said Simeon was his agent for any other purpose, and avers that any assurance given by said Simeon, about complainant's retaining a lien on the land, was wholly unauthorized, and not

binding on respondent; that said Simeon, on his return, brought respondent a deed to said lands from Washburn. Respondent does not know how the assignments on Washburn's bonds came to be made, but he supposes that complainant, to avoid making titles himself, took in his own bond, and assigned Washburn's in its stead, that the title might come direct from Washburn; he appends, as an exhibit to his answer, a copy of the title bond from complainant to Job Taylor Jr., for the lands in controversy, dated November 13, 1839, and assigned by Job Jr. to respondent on the 16th November, 1839; denies that he had any notice of any lien, equity or incumbrance of complainant's, on the said lands, at the time he purchased; was induced to purchase, partly, by complainant's assurance that there would be no difficulty about the title; denies all knowledge of the notes alleged to have been given by Job Jr. to complainant, and calls for proof; admits that he has Washburn's deed for the lands, made as aforesaid, dated December 1, 1840, and made an exhibit to the answer; admits that Job Jr. died insolvent.

After the coming in of this answer, complainant asked and obtained leave to amend his bill. This amendment changes the allegation relative to the exchange of lands, and asserts that said exchange was made by the execution of new title bonds from complainant to Job Jr., and from the latter to complainant; the title bond from complainant to Job Jr., which was made an exhibit to the answer, is now made an exhibit to the amended bill; the value of the lands which complainant exchanged is set down at $8000, and the value of those for which he exchanged at $3500; and it is alleged that the balance of $4500 was to be paid in money, and that none of it has been paid. The heirs at law of Job Jr. are made parties defendants to the bill, among whom are John Rowe and his wife, who was a sister of said Job Jr.

Taylor's answer to the amended bill does not materially vary from his first answer. He demurs to the bill, for want of equity, and for want of proper parties.

Orders of publication were made against the non-resident defendants, and guardians *ad litem* appointed for the minors; and decrees *pro confesso* were taken against those defendants who failed to answer.

John Rowe filed an answer, in which, among other matters not

material, he states that, in the latter part of 1840 or the first of 1841, he went to take possession of the lands in controversy as agent of Job Taylor Jr., and did take possession of them as such, and rented them to one Allen Harden; that complainant, at this time, made no objection to his taking possession, and did not assert any lien or claim upon them, but, on the contrary, informed respondent that he had persuaded Job Jr. to buy them, and was gratified that he had bought them, and he assisted respondent to rent them out; that, at this time, complainant made no claim, equitable or otherwise, to said lands, and said nothing about any failure to pay on the part of Job Jr.

John Rowe was examined as a witness on the part of the defendants, by order of the court: He testifies, that he acted as agent for Job Taylor Jr. in 1840 and 1841, in relation to his lands in Tallapoosa, renting them out, &c.; that he called on complainant, and received from him possession of the lands in controversy; that complainant readily assisted him to rent them out; that complainant told him, in a conversation had between them in the fall of 1840, that he had persuaded Job Jr. to buy these lands, at about $4000, and that he told said Job, in reply to a question from the latter, previous to his purchase, that the title would be good; that he has frequently heard Job Jr. and Job Sr. converse about their business, and has heard the former frequently admit that he owed the latter about $24000; that this amount has been paid by him to said Job Sr. in lands, part of which were the lands in controversy.

Washburn was examined as a witness on the part of the complainant. He testifies, that in November, 1839, he gave to Job Taylor Jr. a bond for titles to the lands mentioned in the bill, and also a bond for titles to complainant, for other lands, as alleged in the bill; that for the lands sold to Taylor, he took his notes for the sum of from $2500 to $2800; that these notes were not paid, and he therefore rescinded the contract, and sold the lands to other persons; that he has frequently heard complainant and said Taylor Jr. both speak of a sale or exchange of the lands mentioned in the bill, which was before the rescission of his contract with said Taylor, and a short time after he had executed his title bond to said Taylor; that he knows nothing, of his own knowledge, about said contract or swap; that he does not know whether complainant had any knowledge of his

rescission of his contract with said Taylor; that he made a deed to Job Taylor Sr. on being presented, through the latter's agent, with his title bond to complainant.

One Tower, a witness examined on behalf of complainant, proves the exchange of lands and execution of title bonds respectively, between complainant and said Job Taylor Jr., as alleged in the bill; that the value put on said Taylor's land was $3500, and the penalty of his bond $7000; that the penalty of the bond given by complainant was $16000; that both bonds were dated November 13, 1839; and that notes were executed by said Taylor to complainant, but the number or amount witness does not know.

Henry Starr proves that complainant transferred to him a note made by said Job Taylor Jr., dated January 12, 1840, and payable one day after date, for $189, which, Taylor admitted, was given for land to which Washburn held title; that he recovered a judgment on this note, for $199,25, which judgment now belongs to complainant, who has paid witness.

John Faulks proves that complainant transferred to him a note on Job Taylor Jr. for $311, dated January 12, 1840, and payable one day after date, on which he recovered judgment for $325; that said Job Taylor Jr. told him this note was given in part payment of the difference in exchange of lands with complainant; that he, Taylor, was to give $1500 difference, and this note was part of it; that complainant paid this judgment in 1841.

One Reese, a witness for complainant, proves that complainant placed in his hands, as an attorney, a note for $800 on Job Taylor Jr., dated Nov. 13, 1839, payable Dec. 25, 1840, to complainant, on which he recovered a judgment in the name of the payee, for the use of Robertson; that Taylor admitted to witness that this note was given for land; that the note was placed in witness' hands by complainant, as collateral security for a note on one Ramage due to Robertson, on which complainant was sued as his surety; that Robertson's debt was collected out of the principal debtor, and the judgment now belongs to complainant. It was admitted that about $400 had been collected under executions issued on these judgments, by sale of lands or other property belonging to said Taylor, in 1843.

One Dillard, another witness for complainant, proves that he

was present at an interview in Dadeville, in the latter part of
1840, between complainant, Job Taylor Jr., and Simeon B.
Taylor, the latter representing himself to be the agent of Job
Taylor Sr.; that the said Simeon wished to procure from com-
plainant an assignment of Washburn's title bonds; that com-
plainant objected to assigning them, because he feared it would
impair his lien for the purchase money of the land, but was as-
sured by said Simeon and Job Taylor Jr. that it could not; that
upon complainant's declaring that he would not be considered
as giving up any lien or legal advantage, they both consented
that the matter should be so considered, and with this under-
standing complainant assigned Washburn's bonds to Job Tay-
lor Sr.

At the hearing, the Chancellor dismissed the bill, with costs.
The errors assigned are:

1. In pronouncing the decree shown by the record ;

2. In pronouncing a decree dismissing complainant's bill ;

3. In admitting and considering the testimony of the defend-
ant, John Rowe.

LEFTWICH and WATTS, JUDGE & JACKSON, for plaintiffs in
error :

I. 1. That a vendor of land has a lien in equity upon the land,
for the payment of the unpaid purchase money, against the
vendee, or purchasers from him with notice, is a proposition too
well established to require citations of authority to support it.

2. The principle upon which this lien is established, is, that
a person who has gotten the estate of another, ought not in con-
science, as between them, to be allowed to keep it, and not to
pay the full consideration money.—2 Story's Eq. Jur. 1219.

3. This principle applies with full force to the facts presen-
ted by the case at bar.—Bradley v. Bosley, 1 Barb. Ch. Rep.
125.

4. Whenever it is contended that this lien has been intention-
ally displaced or waived, the burden of proof to show it is on
the purchaser ; and if, under all the circumstances, it remains in
doubt, then the lien attaches.—2 Story's Eq. Jur. § 1224.

5. And a person who holds merely a title bond for the con-
veyance of land, and sells the land and assigns the title bond, as
was done in the case at bar, retains a lien on the land for the pay-

ment of the purchase money, in the same manner, and to the same extent, as if he had conveyed the land by deed.—Wiseman's Heirs v. Reid, 7 J. J. Marsh. 249.

II. 1. In this case, it is contended that this equitable lien cannot be enforced, because it is said Job Taylor Sr. is a subsequent purchaser of the lands for a valuable consideration without notice ; and that he, in fact, purchased under a representation from Burns, that the title would be good.

2. This being the defence, the burden of proof rests upon Job Taylor to show that he paid a full and valuable consideration ; this proof has not been made by him.

3. There was a witness to the transaction, (Abner Sims,) but he was not examined. He having been withheld, the presumption is, that if he had been examined his testimony would have been against the defendant.

4. Failing to call this witness, defendants relies alone upon the allegations of his answer; are they, upon this point, responsive, so as to be evidence ? One allegation is, that Job Taylor Jr. was indebted to him in a large sum, and that $3400 00 of the purchase money was paid by placing a credit for this amount upon said indebtedness. This is not responsive, and this indebtedness and credit should have been proved.—Cummins v. McCullough, 5 Ala. 324 ; Carpenter v. Devon, 6 Ala. 718 ; Manning v. Manning, 8 Ala. 138 ; Dunn v. Dunn, 8 Ala. 784.

5. And the statement of the answer, that the remaining six hundred dollars of the purchase money was paid in cash, is very inconsistent and unreasonable, if it be true, as stated, that Job Taylor Jr. was indebted to Job Taylor Sr. at the time, in more than twenty thousand dollars, and that the object of the purchase was to settle in part this debt.

6. The answer, too, bears other suspicious marks upon its face ; it strongly indicates that the two Taylors were jointly interested in all the land purchases of Job Taylor Jr. in Alabama, or that Job Taylor Sr. was a general cloak to cover the land-titles of the former.

7. But, conceding that it is sufficiently shown that a full and valuable consideration was paid by Job Taylor Sr. to Job Taylor Jr., then the question arises, was he a purchaser with, or without notice ?

8. Job Taylor Jr. had no titles to the land, but only a bond

for titles; and the lien of a vendor for unpaid purchase money will be enforced, even against a purchaser without notice from the vendee, who only holds a bond for title.—10 Yerger 335.

9. Because the purchaser of an equitable interest purchases at his peril, and acquires the property burdened with every prior equity charged upon it.—7 Cranch 48.

10. The complainant, too, was at the time in the possession of the lands; and when a party purchases land in the possession of a third person, he is affected with all the equitable rights binding on the vendor, and he cannot set up the want of notice to protect himself.—Brewer & Brewer v. Logan, 19 Ala. 481.

11. But did Job Taylor, Sr. purchase in consequence of the representation made to him by complainant, that the title would be good? Such is averred to be the the the fact in the answer, but it is not true, nor is it proved by legal evidence; and this averment of the answer is not responsive, so as to make it evidence.—Cummins v. McCullough, 5 Ala. 324; Carpenter v. Devon, 6 Ala. 718; Dunn v. Dunn, 8 Ala. 784.

12. This averment, too, is inconsistent and unreasonable, when we see from the answer itself, that defendant purchased of Job Taylor Jr., or pretended so to do, at other times, all sorts of titles and claims to lands, as well as lands to which there were no titles.

13. Is this averment of the answer sustained by legal proof? John Rowe is the only witness who was offered to sustain it, and he was an interested witness, and incompetent to testify, and his testimony should have been suppressed or rejected. As a defendant, he answered the bill, engaged actively in the defence of the suit, and thereby incurred a liability for costs, and rendered himself incompetent as a witness.—Holman's Heirs v. Bank of Norfolk, 12 Ala. 369.

14. But it is said Rowe was the agent of Job Taylor Sr., and that an agent is an exception to the general rule, and may testify, though he has an interest in the event of the suit. We answer: 1st. There is no proof of his agency. The answer averring that he was such agent, is not responsive to the bill, and is therefore not evidence; and Rowe himself being *prima facie* incompetent when he was examined, was of course incompetent to prove a fact, to render himself competent. 2nd. If it be proved that he was such agent, still he was incompetent, for

he was interested in the event of the suit, independently of his acts as agent.—McCall v. Sinclair, 14 Ala. 764.

15. Admitting, however, that this averment of the answer is sustained by legal proof, and the complainant is not affected by it; for the assurance that the title to the land was good, was not inconsistent with the equitable lien of complainant being retained; no reference or allusion was made to this lien, which it was well known existed, but the title only was the subject of inquiry. If it had been intended to embrace this lien, it would have been specially mentioned.

16. The delivery of possession by complainant to Job Taylor Sr. was not a waiver of his lien.—Greenup v. Strong, 1 Bibb 590; Taylor v. Alloway, 3 Litt. 216.

17. Admitting that defendant had no notice, actual or constructive, at the time he purchased from Job Taylor Jr., yet, if at any time before the execution of the conveyance he received notice, he is bound by it.—1 Munf. 38; 2 ib. 38; 3 Hen. & Munf. 316.

18. He did receive notice before the execution of the conveyance; for Simeon Taylor, his agent to procure the conveyance, was expressly told, when Washburn's bonds for title were assigned, that the lien would be retained; and this notification to the agent was equivalent to notice to the principal, and the principal is bound by it.

III. 1. But conceding that defendant was a purchaser for a full and valuable consideration, without notice, actual or constructive, express or implied, and that he purchased on a representation by complainant, that the title would be good, and still the lien must be enforced in this case; for, at the time of the assignment by complainant of the bonds of Washburn to defendant, it was expressly stipulated by complainant, as a condition precedent, and acquiesced in by the agent of defendant, that the lien of complainant was not to be thereby divested or impaired.

2. But defendant, in admitting the agency of Simeon Taylor to procure titles for him, denies that he had any authority to make such consent, and insists that he is not bound thereby.

3. This cannot avail defendant, for it is well established, that, if an agent transcends his authority, his acts are yet binding on his principal, if they are ratified; and acquiescence after

a knowledge of the acts of the agent is a ratification ; and whatever is known to an agent, is, in contemplation of law, known to the principal, and the latter cannot aver his ignorance thereof.—Hough v. Richardson *et al.*, 3 Story 659.

4. In this case, if defendant intended to repudiate the act of his agent in procuring the title to said land, he should have returned, or offered to return the title ; by holding on to it, and claiming the land under it as he does, he ratifies the terms under which his agent procured it; he cannot assault said transaction of his agent with one hand, and shield it with the other ; but he must accept or reject it *in toto.*—Daggett v. Emerson, 3 Story 700.

IV. Can a valid objection be urged to proof being made by *parol*, of the understanding between complainant and the agent of defendant, that the equitable lien of complainant should continue upon the land, notwithstanding complainant assigned the bonds of Washburn for title ? We contend not, for this is proof merely of the consideration of the transfer ; and in equity either party, even to a deed, may aver and prove against the other, or against a purchaser with notice, the true consideration on which the deed was founded, though a different consideration be mentioned therein.—4 Hen. & Munf. 118. Besides, no trust was, by said act, created by complainant ; though a trust may be created by parol ; complainant only stipulated for the preservation of an existing right, or that an existing right should not be impaired by the act of assignment.

V. 1. As to the objection that the endorsees of the notes given for a portion of the purchase money should have been made parties to the bill, we say, that that cannot be insisted upon in this court, the record not showing that it was acted upon in the court below ; had it been acted upon below, and the objection sustained, complainant would have had the right to amend; if it is acted upon in this court for the first time, and is decided adversely to complainant, he is denied this undoubted right.

2. But we insist that said persons were not necessary parties ; for the bill avers they had no interest whatever in the judgments on said notes, at the date of the filing of the bill ; and the proof in the record sustains this allegation.

VI. It is insisted that the notes alleged to have been given for the purchase money are not identified. Whether this be so

or not, is immaterial, if this court can perceive that any portion of the purchase money remains unpaid. The amount remaining unpaid, if any, can properly be ascertained on a reference to the master to take an account between the parties, and report thereon.

J. E. BELSER and J. FALKNER, *contra* :

1. It is, at least, doubtful whether the complainant has any lien on the land. The record shows a barter between the parties, and that a lien was never intended to be reserved on the lands exchanged on either side.—White v. Knapp, 8 Paige 173 ; 1 Barbour 125 ; Johns. Ch. 308 ; 2 Green's Ch. 397.

2. The defendant Taylor is a *bona fide* purchaser, without notice, and this is sufficient to dispose of the lien if it ever existed ; and Taylor having shown himself a purchaser, it was incumbent on the complainant to show that he had notice of his lien, at the time of his purchase.—7 Wheaton's R. 46 ; 1 Dev. & Bat. Ch. 333 ; Mart. & Yer. 89 ; 5 Hump. 569 ; 2 Mis. 110. Notice of the lien cannot be inferred from relationship and near connection.—9 Ala. 705.

3. Rowe was a competent witness for the defendant Taylor. He was an agent, and nothing more than a formal party.—Bean v. Pearsall, 12 Ala. 592 ; Colgin v. Redman, 20 *ib.* 650.

4. The defence made by Rowe was not such as brings him within the principles of the following cases.—Holman's Heirs v. Bank of Norfolk, 12 Ala. 406 ; Markan v. Smyth, 11 Price 126.

5. If Rowe is a competent witness, the complainant is clearly estopped from asserting any lien that he had on the lands claimed adversely to him, under the circumstances disclosed.—McCrary v. Remson, 19 Ala. 431 ; Bean v. Welch, 17 Ala. 770 ; 7 Bing. 156 ; 7 Wend. 401 ; 3 Hill 215 ; 17 Ala. 681.

6. But, whether Rowe's evidence is received or not, the decree of the Chancellor is correct, and the estoppel is established by other independent proof. It is also doubtful whether the proof shows that the lands were given for the notes spoken of, or for either of said notes.

7. Taylor's agency must first be proved, before his acts are binding on the principal. The agent is a competent witness to prove the agency. The extent of his agency must also be

proved, and nothing done out of it is binding or conclusive.—Scarborough v. Reynolds, 12 Ala. 252; Bean v. Pearsall, *ib.* 592.

8. The declarations of Job Taylor Jr., after his sale to Job Taylor Sr., going to show that the notes were given for the lands, are not admissible, and without them the court cannot conclude that the notes were given for the lands.—Lee v. Hamilton, 3 Ala. 533.

9. The plaintiffs in the judgments, on which the lien is asserted, are indispensable parties. This is stated in the demurrer, and is of itself sufficient to dismiss the bill. If, after the want of proper parties is objected to, the complainant neglects or refuses to make them, the bill may be dismissed without prejudice.—Gayle v. Singleton, 8 Porter 270; Goodman v. Benham, 16 *ib.* 625.

10. The object in making Rowe a defendant was, to prevent him from being a witness. A disclaimer by him would not have satisfied the complainant's demands.

11. Does the assignment of the bond by Burns assign the lien, if it exists at all?

PHELAN, J.—It is objected that the testimony of John Rowe, in behalf of his co-defendant, Job Taylor Sr., should not have been received. We see no good ground for the objection. He was only a formal party, as husband of one of the sisters of Job Taylor Jr., who was made a party defendant as heir at law of her brother, the object of the bill being to divest the title to lands in which he once had an interest. The witness is called to support the title of Job Taylor Sr. to the lands in question, and is, therefore, called to testify against his interest as husband to one of the heirs of Job Taylor Jr., under any aspect of the case. Even if this were not so, there was no interest which would disqualify him; for both the bill and answer show that Job Taylor Jr. died wholly insolvent.

But, it is said, he took so active a part in the defence, that he made himself liable for costs, and that this will render him incompetent as a witness. When a party defendant to a bill, who, from the face of the proceedings, would appear to have no real interest, makes a long and formal answer, and sets up matters that do not properly concern him as a defence to the bill,

he raises a strong suspicion that he is, in fact, interested in the event of the suit, although that interest may not appear; and courts have sometimes held that the testimony of such a witness may be rejected, and place it upon the ground, that he thereby makes himself liable for costs, if the case goes for the complainant. We find the rule so stated in the opinion of the court, in the case of The Heirs of Holman v. The Bank of Norfolk, 12 Ala. 405. But, in that case, there was no necessity so to decide, for the party defendant, who was made a witness, was shown to have an interest other than that which respected the costs.

We hesitate to affirm the correctness of any such rule. The imposition of costs in chancery goes by no fixed law. The chancellor makes the law as respects costs for each case, according to its own peculiar features and circumstances. If, then, I have an interest in the testimony of a witness, whom the complainant chooses by his bill to make a co-defendant with me, where is the justice in holding that, if my co-defendant chooses, without any participation of mine, to make himself meddlesome in a defence that does not concern him, I shall suffer the loss of my testimony, because the chancellor may impose costs upon him? At common law, my witness cannot, without my consent, acquire by his own act such an interest as will deprive me of his testimony. But by this rule, if my witness is made, at the option of the other side, a party defendant with me in chancery, and through ignorance or negligence, or even through secret hostility to me, makes an active defence to the bill, he will be incompetent to testify for me, because by his own act he has subjected himself to the payment of some part of the costs. But it is in the chancellor's discretion, after all. His testifying need not save him, and cannot, unless the chancellor sees proper. He may decree for me, and, so far as justice warrants, put the costs where he pleases; a portion of it on my meddlesome co-defendant as soon as any other. Now, the interest which disqualifies must be a direct and certain interest in the event of the suit, or in the record; and this is to be tested, ordinarily, by the state of the case when the suit is commenced; for, as Chancellor Kent says, in Woodhull v. Rumsey, 3 John. Cases, 234: "The interest, in order to exclude the witness, must not have arisen after the fact to which he is called to testify happened, and by his own

act; because, in that case, it would be in the power of the witness, and even of the adverse party, to deprive the person wanting his testimony of the benefit of it." See, also, Colgin v. Redman, 20 Ala. 650.

We proceed next to the consideration of the questions which relate to the vendor's *lien*, which Burns claims to hold on these lands, as against Job Taylor Sr.

The facts are these: Burns and Job Taylor Jr. exchanged lands on the 13th November, 1839, and executed to each other respectively bonds for title of that date. They contained on their face no other condition than that the parties should make title as soon as patents were obtained from the United States. Nothing was said about the payment of purchase money as a condition to making title. Both then held title bonds from one Washburn for their respective tracts. On the 16th Nov. 1839, the defendant, Job Taylor Sr., made a purchase from Job Jr. of the lands he got from Burns, and took an assignment of the bond from Burns to said Job Jr. Before he purchased of Job Jr., Job Sr. made inquiries of Burns, who was then on the land, about the titles, if he should purchase of Job Jr., and was told by Burns that there would be no difficulty about the title, and advised by Burns to make the purchase. He did purchase, and took an assignment of Burns' bond, 16th November, 1839, as aforesaid; and the proof in the cause goes to establish the fact, that he paid a full consideration, and purchased in good faith of Job Jr., who then owed him a large amount for money loaned to carry on speculations in Indian lands.

On the exchange between Job Jr. and Burns, the latter was to receive $1400 as difference in the value of the tracts, and Job Jr. made his notes for about that sum, which were afterwards put in suit, but have never been paid, and are now the property of Burns. After the exchange between Job Jr. and Burns, the former rescinded his contract with Washburn for the purchase of the lands he contracted to convey to Burns, and Washburn sold them to other persons, and Burns never came into possession of them.

In the fall of 1840, one Simeon Taylor, as agent of Job Taylor Sr. to get a deed, called upon Burns, having then in his possession the title bond from Burns, which Job Jr. had assigned to Job Sr., 16th November, 1839, (Job Jr. was in company,)

and said Simeon Taylor requested Burns to assign to Job Sr. the bonds he held from Washburn. This he at first refused to do, saying he would probably thereby impair his *lien* for the purchase money; but, upon being assured both by Simeon Taylor and Job Jr. that his assignment of Washburn's bond could not have that effect, and upon Simeon Taylor's agreeing to take the assignment with the understanding that no *lien* existing should be impaired by it, Burns made to Job Taylor Sr. an assignment in writing of Washburn's bond to him for the lands which he let Job Jr. have in the exchange, and Washburn afterwards made a deed to Job Taylor Sr.

After the purchase by Job Sr., and before his assignment of Washburn's bonds, Burns had delivered possession of the lands to the agent of Job Sr., and assisted him to rent them out, saying nothing at the time of a *lien* that he claimed for unpaid purchase money, or that he had not received possession of the lands which he was to get in exchange.

On this state of facts two questions arise: 1. Did Burns hold a vendor's *lien* for the purchase money, after his exchange of lands, as aforesaid, with Job Taylor Jr.? 2. If so, has he done anything to forfeit that *lien*, so far as Job Taylor Sr. is concerned?

By the law as settled in this State, a vendor of land, who takes no independent security for the payment of the purchase money, holds a *lien* upon the land for the purchase money, against the vendee and all claiming under him with notice of the *lien;* and this, whether he executes a conveyance, or only gives a bond to make title.—Haley v. Bennett, 5 Porter 452. This *lien* is considered as an equitable mortgage, and there is nothing to distinguish an exchange of lands, so far as respects the application of this principle of *lien* for the purchase money, from a sale of lands.—Bradley v. Bosley, 1 Barb. Ch. 125. We think it clear that Burns had a *lien* on the lands he let Job Taylor Jr. have in exchange, to the full extent of the purchase money, made up of the value of the lands he was to get in exchange, which he never obtained, and the balance of $1400 for which Job Jr. gave his notes, which he never paid.

2. Has he done anything to forfeit this *lien* as against Job Taylor Sr.? We think he has. In the first place, it is to be remarked, that the bond which Burns gave to Job Taylor Jr.

contained no other condition than this, that titles should be made as soon as patents were obtained from the United States. Nothing is said about the payment of purchase money, as a condition precedent to the obligation to make title. From the face of such a bond as this, the presumption is, that the purchase money had been paid. It would be no more warning to a purchaser from the holder of such a bond that the purchase money was still due to the obligor, than would be a deed for the land in the hands of such holder containing the common acknowledgment that the consideration had been paid. The consideration for this bond, namely, the payment of the purchase money for the land, in the absence of words in the condition of the bond which went to negative such an idea, is implied; the bond itself is *prima faeie* evidence of that, and would be so held in a suit on the bond.

In principle, then, it comes to this, that such a bond, in the hands of Job Taylor Jr., was no more notice to Job Taylor Sr., his vendee of the land and assignee of the bond, that the purchase money remained unpaid, and was yet due and owing to Burns, than if Job Jr. had held a deed in fee simple from Burns for the land. That would have been only *prima facie* evidence that the purchase money had been paid, and such a bond was equally so.

But Burns was in possession of the land. This fact alone made it necessary for a purchaser from Job Taylor Jr. to make further inquiry, before he purchased from one out of possession. If Job Jr. had then held a complete deed, instead of only a bond for titles, the same rule would have prevailed. The fact that another was in possession of the land was sufficient to put a purchaser upon inquiry, and would preserve a *lien* against any who might be willing to hazard a purchase without making inquiry.—Brewer v. Logan, 19 Ala. 481.

We find that Job Taylor Sr. did make inquiry at the proper quarter. He went to Burns, who was in possession, and talked, it seems, fully with him about having an intention to buy the land, if the title was good. Burns advised him to buy at the price he afterwards gave, and, in answer to a question evidently intended to elicit all he knew that would make for or against the propriety of such a purchase, told Job Sr. that if he bought there would be no difficulty about the title to the land. Ac-

cording to the testimony of Rowe, he assured said Job Sr. that the title was good.

Whatever may be the hardship upon him, to hold that such acts and such language from Burns, in respect to this land, will not amount to a waiver of his *lien* in favor of Job Taylor Sr., would be to protect a man from the natural consequences of his own acts, and cast any injury that may result from them upon the party who acted on the faith of them. There is every reason to suppose, that the conduct and declarations of Burns influenced the subsequent purchase of the defendant Taylor.

In such a connection as it occurs here, what is the reasonable and just interpretation of an assurance by one man to another that the title to a tract of land which the latter is about to purchase is good? Is it merely that the chain of title can be traced without difficulty to a source that is unquestionably good, (to the Federal Government, for instance, with us, where the land has been once public)? Would that be the common, popular understanding between two men of ordinary intelligence in our country, who were in a negotiation about the sale and purchase of a tract of land? It cannot be pretended. On the contrary, they would mutually understand such an assurance to carry with it the idea that the seller would convey, and the buyer would receive, a title good against all conflicting claimants, and also good or free from all *liens*, incumbrances and equities.

But this is not only the popular, it is the legal signification of such terms in a promise, agreement or covenant. These bonds "to make title,"—"to make a good and sufficient title,"—are obligations to convey the legal estate in fee, free from all valid claims, liens, or incumbrances whatever.—10 John. 266; 1 Blackf. 380; 12 Ala. 39. When, therefore, Burns, who then held a vendor's *lien* for the purchase money, as against Job Jr., who held his bond for title, advised Job Sr. to purchase the land, and, instead of disclosing to him the fact that the purchase money was unpaid, and that he held a *lien* to that extent upon it, assured him, in reply to his demand for information, that if he bought there would be no difficulty about the title, and that he would get a good title, his acts and his words amount in law to an abandonment, a waiver, of his *lien* in favor of Job Taylor Sr. His acts amount to an *estoppel in pais* of his right to assert this *lien* against the man whose purchase may well be supposed

to have been influenced by them.—2 Sugden on Ven. 299 ; 33 Cond. Eng. C. L. R. 115 ; Roland v. Day, 17 Ala. 681; Stone v. Britton, 22 ib. 543.

His surrender of the possession of the lands to the agent of Job Taylor Sr., after the purchase, without any intimation that he held a *lien* upon them, would go far to indicate that he himself then put the same interpretation upon his previous acts.

But it is urged that, when Burns was afterwards applied to and requested to assign Washburn's bonds to Job Sr., he then set up his *lien*, and refused to make the assignment, until it was agreed on the part of Simeon Taylor, who was acting in the matter for Job Sr., that such assignment was not to be considered as affecting in any manner the *lien* he might have for the purchase money.

We readily concede, that, if the *lien* had not been forfeited by what had transpired previously to that assignment, there was nothing in it that would deserve to work such a consequence. If the *lien* was good then, the assignment with the express stipulation of Simeon Taylor, who acted for Job Taylor Sr., that it should not be affected thereby, would not have impaired it in the least.   And whether Simeon Taylor had authority from Job Sr. to make such a stipulation or not, would make no difference, if Job Sr. acquired any advantage by the assignment, and insisted upon holding on to it ; the stipulation would bind him, if he gained anything by it which he claimed to retain, even without a previous authority, for that would be an adoption of the act.

But he gained, in legal contemplation, nothing by the assignment that he was not already fully entitled to from Burns by the condition of this bond, namely, a deed in fee simple for the land, with covenant of general warranty for quiet enjoyment, and against all liens and incumbrances.   Burns' bond to Job Taylor Jr., assigned to Job Taylor Sr., bound him to make a deed in fee simple.   Washburn's bond to him bound Washburn to make a deed to him.   But, instead of making a deed himself direct to Job Sr., he assigns to him Washburn's bond in place of his own, and Washburn makes the deed direct to Job Sr.   There was nothing gained by Job Sr. in this arrangement, so far as Burns was concerned.   It was only taking an assignment of Burns' bond, instead of his deed, which he was

bound in law to make; and this surely could work no prejudice to him. The stipulation of Simeon Taylor, therefore, that the assignment of Washburn's bond should not affect any *lien* for the purchase money which Burns then held, regarding it as the stipulation of Job Taylor Sr., amounted to nothing. There was no *lien* to lose; it had been forfeited already. And if Burns assigned the bond, under the influence of such a stipulation, he did no more, at last, than was for his own benefit, and that fulfilled, in a way entirely for his own advantage, the obligation of his bond to make title to these lands.

Seeing that the decree of the chancellor dismissing the bill is well justified upon a full consideration of the merits of the case, we deem it unnecessary to examine or decide the question which is presented by the argument of defendants in error, in relation to the necessity for making the plaintiffs in the judgments against Job Taylor Jr., and which the bill alleges now belong beneficially to the complainant, parties to the bill as defendants.

In view of what has been already said, it is only necessary to add that the decree of the chancellor dismissing the bill is affirmed, at the cost of plaintiffs in error.