JAMES T. STEVENS, *et al.*, v. FRANK CHADWICK.

1. VENDOR'S LIEN; *Title Bond.* The vendor of real estate who has executed
only a title bond to convey, holds a lien for the unpaid purchase-money.
(*Simpson v. Mundee*, 3 Kas., 172, considered, and distinguished.)

2. ———— *Indorsement of Note; Transfer of Lien.* An indorsement of a
note given for such unpaid purchase-money transfers the vendor's lien.

*Error from Douglas District Court.*

ACTION brought by *James T. Stevens* and *Calvin A. Har-
rison*, as plaintiffs, against *Chadwick* as defendant. The
petition discloses substantially the following facts: On April
23d, 1870, F. W. Apitz owned lot No. 114, Connecticut
street, city of Lawrence, and through the plaintiffs, land-
agents, he entered into a contract to sell the same to one
Belle Collier, the plaintiffs to receive as their compensation
for negotiating the sale $100 of the purchase-money. Pur-
suant to these negotiations Apitz executed a title bond,
binding himself, his heirs and representatives, to convey the
lot to Collier on her paying nine certain promissory notes to
be executed by her of even date with the bond — which notes
were to be for $50 each, and formed, together with $100 paid

down, the consideration of the bond. In the bond it is expressed that the nine notes are to be made payable to Apitz; and Apitz (in the bond) "expressly reserves the right to declare this bond forfeited on the failure of the said Belle Collier to pay *either* of said notes when due," said Collier agreeing on such default to surrender up the premises. The condition of the bond is, that if Collier pays the notes and interest as aforesaid, and the taxes, Apitz will *forthwith* convey said lot by a deed of general warranty, otherwise, on default of payment the bond to be void. The bond was recorded May 5th, 1870. On the day named the nine notes were executed by Collier — and by agreement made between her, Apitz, and plaintiffs, the two notes sued upon in this action were delivered to plaintiffs as their property. One of these notes on its face is drawn payable directly to plaintiffs or order, and the other drawn payable to the order of Apitz, who in the same transaction indorsed the same to plaintiffs; and it is alleged in the petition that the money mentioned in said notes was a part of the consideration for said lot expressed in said bond. The usual allegations of ownership of the notes by plaintiffs, their maturity, demand of payment, and non-payment, were made, and it is alleged that Collier took possession of the lot under the bond. It is further alleged that subsequent to the foregoing sale Collier sold to *Frank Chadwick*, defendant, her interest in said lot; that he took possession thereof subject to the terms and conditions of said bond, having knowledge of the original transaction, and notice of the delivery of the notes to plaintiffs, their ownership thereof, that they were unpaid, and of the rights of plaintiffs in the premises for said part of the purchase-money. It is also alleged that Apitz transferred the seven remaining notes to Lobenstien; that Belle Collier paid four of these seven notes to Lobenstien at their maturity *and became insolvent*, and was insolvent at the time of the commencement of this action; that after *Chadwick* so as aforesaid purchased the interest in said lot of Collier, he paid to Lobenstien the three remaining notes of the seven; that he refused to pay

the notes sued upon; that thereafter, and before the commencement of this action, *Chadwick*, without the knowledge or consent of the plaintiffs, and with full knowledge of the rights of plaintiffs, and that their said notes remained unpaid, and that Belle Collier was insolvent, procured a deed from said Apitz to said premises. Plaintiffs demanded judgment for said sum of $100 and interest, that the same be decreed to be a lien on said lot No. 114, and that said lot be sold, and that the proceeds of said sale be applied to the payment of said sum and interest, and costs, etc. *Chadwick* demurred. The case was heard on the demurrer at the March Term 1872. The district court sustained the demurrer, and *Stevens & Harrison* bring the case here on error.

*Thacher & Stephens*, for plaintiffs in error:

1. The obligation entered into by Apitz was an agreement to convey *if* the obligee should pay, etc., and contained a clause of re-entry. The equity held by Collier therefore was a conditional estate: 1 Washb. on Real Prop., 467, (marg. p. 446.) The covenants of the respective parties are dependent: Hilliard Vend., 243, ch. 14, § 2.

2. The contract created *trusts* as between the parties as to the subject-matter. The vendee was constituted a trustee of the purchase-money for the vendor: (1 Humph., 502; 3 Md. Ch., 488; 25 Miss., 88.) And the vendor is regarded as a trustee of the land for the vendee. The land is in equity the property of the vendee, who may dispose of it or incumber it as though he had legal title, subject to the rights of the vendor under the contract: *Wing v. McDowell*, Walker's Ch., (Mich.,) 175. The land is said to *stand charged* in the hands of the vendee with the amount of the purchase-money: 1 Texas, 326. A vendor of land who has executed his bond to convey, conditioned upon payment of the purchase money, has a lien on the land *until payment*. [Cases cited in support of this proposition are the same as those cited in the opinion, *infra*.] A ground for a lien in this class of cases exists that is not found in the cases on vendor's lien for purchase-money where an absolute

conveyance has been executed. The fact that the vendor retains the legal title shows an intent in the parties to create a lien. The reservations and conditions of the vendor's title-bond in this case also show an express lien.

In absence of statutory regulation, doubtless any equitable proceeding, not repugnant to a statute, which subjects the land to the payment of the lien, is proper. 1 Lead Cas. Eq., 366; 7 Paige, 382, 385; 14 Ohio, 20; 9 Texas, 401; 12 Texas, 195; 17 Cal., 403; 21 Cal., 172. Resort need not be had in the first instance to the vendee personally, but may be commenced directly against the land: *Sparks v. Hess*, 15 Cal., 186. A tender of deed before suit is not necessary: *Adams v. Wadams*, 40 Barb., 225.

3. This class of cases, when the contract of purchase is executory, must be distinguished from that class of which *Simpson v. Mundee*, 3 Kas., 172, is the type. In that case the contract has been *executed* on the part of the vendor—he had *conveyed absolutely;* nothing appeared upon the face of the papers that the vendor relied upon the land for his pay. If a lien existed in his favor it was a *mere naked equity*, which to be of any force had to be *established* by a decree of court: Sug. Vend., 324, note 2; 1 Mason, 181, 221; 21 Cal., 177. The vendor reserved no specific lien, no trust qualifying the estate is shown, in the transaction in the case *Simpson v. Mundee*.

4. The case at bar is one where the sale was conditional, where by the terms of sale no conveyance was to be made until full payment of the nine notes, and where a right of re-entry was reserved. The legal title was reserved as security for the unpaid purchase-money. Cases are not uncommon where the transfer of the notes by the vendor, in a separate transaction, carries with it the right to enforce the vendor's lien for the unpaid purchase-money. This class of cases are founded upon the general doctrine, that the transfer of the principal evidence of debt, carries with it all incidents and remedies. An indorsement and delivery of a note is of this nature of transfer: Edw. Bills and Notes, 250, 265. There may be some question in the cases as to the assignability of that "pro-

27—10 KAS.

tean entity," generally denominated a "vendor's lien," which is left after an absolute conveyance of the real estate. But where a vendor by bond, for a conveyance conditioned on payment of the notes given for the purchase-money, assigns a note received in payment, and agrees that the assignee shall be substituted to the benefit of all security held by him, the assignee succeeds to the right to enforce the vendor's lien: Hilliard Vend., 52; 8 Iowa, 144; 1 Md. Ch., 220; 5 Ind., 492; 33 Ind., 184; 9 Paige, 431; 1 Lead. Cas. Eq., 369.

*Smith & Hampton,* for defendant in error:

1. The general policy of the real estate laws of Kansas is to discountenance secret trusts; to require everything concerning the title to or rights in land to be in writing, and to simplify the means of securing liens; and it was held that the doctrine of vendor's lien is repugnant to, and would practically change this policy as contemplated and established by statute. *Simpson v. Mundee,* 3 Kas., 172.

2. A vendor's lien is not transferred with the note, unless perhaps where the vendor has been fixed as indorser, or by special agreement before the title passes to the vendee's assignee: *White v. Williams,* 1 Paige, 502. A vendor's lien is personal, and does not pass to the assignee of a promissory note given for the purchase-money: *Brush v. Kingsley,* 14 Ohio, 20. A lien for the purchase-money is an equity between the vendor and vendee, which arises to the vendor for his own safety, and cannot be transferred. It therefore does not attach to notes taken for the purchase-money, and pass by a transfer of the notes to an assignee: *Jackman v. Halleck,* 1 Ohio, 318; 2 Ohio, 383, 11 Ohio St., 58, 67. The law does not authorize the assignment or transfer of a vendor's lien to the purchaser of notes given for the purchase-money. Such a lien is not assignable, even by express language. The lien is personal, and can only be enforced by the vendor. *Keith v. Horner,* 32 Ill., 524; 38 Ill., 294. A note given for the purchase-money of land if transferred does not carry with

it to the assignee the vendor's lien, so that the assignee can enforce it in his own name. 27 Ill., 431.

In the case at bar, Apitz had conveyed to Chadwick by a warranty deed before plaintiffs attempted to enforce their lien; and a bond for a deed does not partake of the nature of a mortgage in any respect so as to enable an assignee of a note, given by the vendee to the vendor for purchase-money, to obtain a lien against the vendee or his assignee after the vendor has conveyed the title.

The opinion of the court was delivered by

Brewer, J.: Two questions arise in this case: First, Has the vendor of real estate, who has executed only a bond to convey, a lien for the unpaid purchase-money? and second, If he has, will the indorsement of a note given for the unpaid price transfer this lien? Counsel for defendant in error have cited *Simpson v. Mundee*, 3 Kas., 172, as furnishing a conclusive answer to the first question. We do not so understand it. That case decided that, where an absolute conveyance has been made, the grantor has no lien for the unpaid purchase-money. That decision we have no desire to disturb; but it does not reach the question here. True, the lien claimed in this, as in that, is called a vendor's lien, and properly so, for it is a lien claimed by a vendor upon the real estate he has sold. But beyond the identity of name there is little similarity between them. There the conveyance had been made; the title parted with. The lien, if it existed, grew not out of the contract of the parties. They had not in terms stipulated for any security. As was then said by Ch. J. Crozier, "There is a great variety of opinion among modern courts as to what the vendor's lien is. Some of them regard it as a resulting trust; others as an equitable mortgage; and others still as a compound of both. Very manifestly it has none of the attributes of either. It does not arise out of the contract of the parties, nor does it result from the operation of law. It is the mere creature of a court of equity, breathed into existence independently of the original intention of the parties, and

entirely without their aid." But here the title is not parted with. By contract it is to be retained till the price is paid. The agreement of the vendor substantially is this: When you pay the price, you can have the title; till you pay, I retain it. The title is held as security for the price. The vendee cannot compel a conveyance till he pays the price; not even, says the supreme court of Alabama, though the notes given for the price are barred by the statute of limitations and no recovery can be had thereon. *Driver, Adm'r, v. Hudspeth,* 16 Ala., 348. There is no secret trust in this; nothing which is repugnant to the real-estate jurisprudence of this state. The rights of the parties are determined by and expressed in the contract. The vendee holds no title, can convey none till he has paid the purchase-money. All this appears upon the record. To hold that there is no lien, would be to repudiate the contract which the parties have made—a contract which is fair and reasonable for both, conflicts with no statute, and is not against public policy. The distinction between these two liens is not always recognized or noticed in the books. Especially in those states, where the vendor's lien after absolute conveyance is enforced, are the two liens treated as though identical, and subject to the same rules. But the distinction between them is obvious, and has been often noticed. Chief J. Watkins, in *Moore and Cail, Adm'rs, v. Anders,* 14 Ark., 634, speaking of bonds for conveyance, says: "The lien reserved by means of them to the vendor has none of the odious characteristics of the vendor's equitable lien for the unpaid purchase-money, where, having conveyed the legal title, acknowledging the receipt of the purchase-money, he ought not to be heard to assert it against any subsequent purchaser, or incumbrancer, without clear and unequivocal proof of actual notice." Chief J. Field, in *Sparks v. Hess,* 15 Cal., 194, uses this language: "Between the lien they thus assert, and the ordinary lien of a vendor after conveyance executed, there is a marked difference. In the latter case the vendor has parted with the legal and equitable title, and possesses only a bare right, which is of no

operative force or effect until established by the decree of the court. In the present case, the vendors have retained the legal title, and evidently as security for the purchase-money. Their position is, in some respects, similar to what it would have been, had they executed a conveyance to the vendee and taken from him a mortgage upon the property. A mortgage is in form a conveyance of the legal title, though intended only as security for the debt. Here the title is retained by the vendors for a similar purpose of security." See also as authorities sustaining this kind of lien, *Smith v. Robinson*, 13 Ark., 533; *Taylor v. McKinney*, 20 Cal., 618; *Haley v. Bennett*, 5 Parker, (Ala.,) 452; *Driver, Adm'r, v. Hudspeth*, 16 Ala., 348; *Kelley v. Payne*, 18 Ala., 371; *Burns v. Taylor*, 23 Ala., 255; *Moore v. Burrows*, 34 Barb., 173; *Scarlett v. Hunter*, 3 Jones Eq., (N. C.,) 84; *Lewis v. Capertoies*, 8 Grattan, 148; *Graham v. McCampbell*, Meigs Rep., 52; *Anthony v. Smith*, 9 Hump., 511; *Amory v. Reilly*, 9 Ind., 490; *Button v. Schroyer*, 5 Wis., 598; *Clark v. Hall*, 7 Paige Ch., 382. In Virginia, where by statute the lien after conveyance was abolished, a lien like this was sustained. In *Yancy v. Mauch*, 15 Grat., 305, the court say: "The statute abolishes the lien where the vendor has conveyed the legal title, and has not reserved it on the face of the deed. It does not apply to the case where the title has been retained by the vendor, for the obvious reason that in such case the principles of our statutes requiring mortgages or deeds of trust to be recorded, was not infringed upon, and because purchasers for value of the legal title would not be endangered by parol proof of notice." It seems therefore to us both on reason and authority that the first question must be answered in the affirmative.

II. Will an indorsement of a note given for the purchase-money transfer the lien? In cases of lien, after absolute conveyance, the general drift of the authorities is to the effect that an indorsement of the note does not transfer the lien; and this upon the ground that, the lien not being the result of contract, but the mere creature of equity, a bare right of no operative force or effect until established by the decree of

a court, is a purely personal privilege which cannot be transferred. See a collection of the authorities made by Chief J. English in the case of *Shall v. Biscoe*, 18 Ark., 142. There are, as will be seen, conflicting decisions upon this point; but such seems to be the great weight of authority. The principle upon which these decisions rest seems to have little application here. The lien which the vendor has is something more than a bare right, a personal privilege. It is an interest created by the contract of the parties, and is as fixed, complete, and absolute as the interest of a mortgagee. It is more, for the mortgagee has no estate in the land under the decisions of this court, while the vendor in a bond to convey holds the legal title. It is a general rule, that the incident follows the principal; the transfer of a debt carries with it the security. The vendor holds the legal title as security. He transfers the debt which is secured. Why may not the indorsee, the holder of the debt, avail himself of the security? In case of a mortgage the rule is well settled. What is this but an equitable mortgage? We shall have to answer the second question also in the affirmative. Authorities are ample sustaining these views. See among others, *Graham v. McCampbell*, Meigs, 52; *Thompson v. Pyland*, 3 Head, 537; *Raper v. McCook*, 7 Ala., 318; *Connor v. Banks*, 18 Ala., 42; *Kelley v. Payne*, 18 Ala., 371; *Wells v. Morrow*, 38 Ala., 125; *Smith v. Robinson*, 13 Ark., 533; *Moore & Cail, Adm'rs v. Anders*, 14 Ark., 628; *Lagon v. Badollet*, 1 Blackf., 416; *Brumfield v. Palmer*, 7 Blackf., 227; *Farmer v. Hicks*, 4 Smedes & M., 294; *Parker v. Kelley*, 10 Smedes & M., 184; *Terry v. George*, 37 Miss., 539. In the following cases the assignment of the note was accompanied by a conveyance of the land, and the lien was held to be transferred: *Taylor v. McKinney*, 20 Cal., 618; *Baum v. Grigsby*, 21 Cal., 172; *Hooper v. Logan*, 23 Md., 204.

The judgment of the district court will be reversed, and the case remanded with instructions to overrule the demurrer.

All the Justices concurring.